*Board of County Commissioners of St. Mary's County, Maryland v. Barbara and Christopher Aiken, et al.*, No. 28, September Term, 2022. Opinion by Hotten, J.

**REAL PROPERTY – DEED CONSTRUCTION – FEE SIMPLE TITLE CONVEYED BY DEED**

We apply "basic principles of contract interpretation" when "construing the language of a deed[.]" *Md. Agric. Land Pres. Found. v. Claggett*, 412 Md. 45, 62, 985 A.2d 565, 575 (2009) (internal quotation marks and citation omitted). When the language of the deed "is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Id.* at 63, 985 A.2d at 576 (internal quotation marks and citation omitted). In doing so, we "consider the deed as a whole, viewing its language in light of the facts and circumstances of the transaction at issue as well as the governing law at the time of conveyance." *Chevy Chase Land Co. v. United States*, 355 Md. 110, 123, 733 A.2d 1055, 1062 (1999). "Unless a contrary intention appears by express terms or is necessarily implied, every grant of land passes a fee simple estate." *Mayor & City Council of Balt. v. Thornton Mellon, LLC*, 478 Md. 396, 414, 274 A.3d 1079, 1089 (2022) (citation omitted).

A landowner conveyed property to the State by way of a deed in 1945. The plain, unambiguous language of the deed demonstrates that the property was conveyed in fee simple absolute. Nothing in the deed suggests a limitation, reversionary interest, or conveyance other than an interest in fee simple absolute. Property that is conveyed by deed for a public purpose does not debase or limit the estate conveyed. *Gilchrist v. Chester*, 307 Md. 422, 426, 514 A.2d 483, 485 (1986) (citation omitted); *Stuart v. City of Easton*, 170 U.S. 383, 394, 18 S. Ct. 650, 654 (1898) (citation omitted). Rather, the deed's relevant language, "forever in fee simple," "all our . . . interest," "all the land," indicates the intent of the landowner to convey a fee simple absolute interest. *See* Md. Code Ann., Real Property § 2-101. Since the language in the deed is unambiguous, we need not resort to extrinsic evidence. *See Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 56, 73 A.3d 224, 235 (2013). Accordingly, the circuit court correctly granted summary judgment for St. Mary's County and did not err in denying Respondent's motion for summary judgment.

**REAL PROPERTY – DEDICATION BY DEED – CREATION OF A PUBLIC ROAD**

In Maryland, public roads are established by: (1) public authority, (2) dedication, or (3) prescriptive easement. *Clickner v. Magothy River Ass'n Inc.*, 424 Md. 253, 269, 35 A.3d 464, 474 (2012) (citation omitted). This case does not involve establishment by public authority, which requires an exercise of eminent domain, or by prescriptive easement, which was not raised before this Court. *See* Md. Rule 8-131. Here, the landowner conveyed property to the State in fee simple absolute "for public convenience, necessity[,]

and safety[,]" which provided the State with a "material benefit[.]"  This case, therefore, fits squarely within this Court's jurisprudence regarding common law dedications. *Maryland-Nat'l Cap. Park & Plan. Comm'n v. Town of Washington Grove*, 408 Md. 37, 75–76, 968 A.2d 552, 575 (2009).  "[C]ommon-law dedications are voluntary offers to dedicate land to public use, and the subsequent acceptance, in an appropriate fashion, by a public entity."  *City of Annapolis v. Waterman*, 357 Md. 484, 503, 745 A.2d 1000, 1010 (2000).  The "governing test[]" for a common-law dedication is the landowner's unambiguous intent "to dedicate his [or her] land to [a] particular [public] use[.]"  *Blank v. Park Lane Ctr., Inc.*, 209 Md. 568, 574–75, 121 A.2d 846, 848 (1956) (internal quotation marks and citations omitted).

A public road was established by a completed common-law dedication by the landowner's offer and the State's subsequent acceptance.  The landowner offered to dedicate property "for public convenience[]" and "for a public highway" "forever in fee simple[.]"  The deed language and the recordation of the plats constitute evidence of the landowner's offer to dedicate property to "public use[.]"  *Olde Severna Park Improvement Ass'n, Inc. v. Gunby*, 402 Md. 317, 330–31, 936 A.2d 365, 372–73 (2007).  The State accepted the landowner's offer to dedicate property by "assuming control" of the property and recording the deed and plats.  The State's acceptance is further confirmed by a subsequent deed from the State to St. Mary's County.  Additionally, the State's subsequent conveyance to the County reflected that the State conveyed the entirety of the property in question as "a county road" for a "transportation purpose" pursuant to its statutory authority.  Accordingly, the circuit court erroneously concluded that no public road was created.

Circuit Court for St. Mary's County
Case No.: C-18-CV-18-000489
Argued: March 3, 2023

IN THE SUPREME COURT

OF MARYLAND*

No. 28

September Term, 2022

_____

BOARD OF COUNTY
COMMISSIONERS OF
ST. MARY'S COUNTY, MARYLAND

v.

BARBARA AND CHRISTOPHER
AIKEN, ET AL.

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: June 20, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

*During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

This case concerns the ownership and access rights to a parcel of real property in St. Mary's County, Maryland (the "Property"), stemming from a failed set of road projects by the State in the 1940s. In 2018, Respondent, John A. Wilkinson, trustee of the Wilkinson Family Trust ("Wilkinson"), sued Petitioner, the Board of County Commissioners of St. Mary's County, Maryland (the "County"), asserting ownership of the Property. Respondents, Barbara and Christopher Aiken, trustees of the Aiken Family Trust (the "Aikens"), intervened as defendants, asserting access rights to the Property.

The parties filed cross motions for summary judgment, seeking declaratory judgment to determine their rights with respect to the Property and whether the Property is a public road. The Circuit Court for St. Mary's County denied Wilkinson's motion for summary judgment and granted the County's motion for summary judgment on its declaratory judgment claim, finding that the County owns the Property in fee simple absolute and that no public road exists on the Property.

The Appellate Court of Maryland[1] affirmed that the County owned the Property in fee simple absolute, but concluded that the circuit court erred in determining that there was no public road over the Property. *Wilkinson v. Bd. of Cnty. Comm'rs of St. Mary's Cnty.*, 255 Md. App. 213, 270, 279 A.3d 1052, 1087 (2022). Given the Appellate Court's conclusion that a public road was established over the Property, the court vacated and remanded the case to the circuit court for a consideration of certain claims filed by the

---

[1] During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

Aikens, which we discuss in more detail herein. *Id.*, 279 A.3d at 1087. The County filed a petition for writ of *certiorari*, which we granted on November 18, 2022, *Bd. of Cnty. Comm'rs of St. Mary's Cnty. v. Aiken*, 482 Md. 143, 285 A.3d 849 (2022), to address the following questions presented, which we have rephrased as follows:[2]

1.) Did the Appellate Court err in concluding that the County owns the Property in fee simple absolute?

2.) Did the Appellate Court err in holding that, as a matter of law, a public road was established on the Property by dedication?

We answer these questions in the negative and shall affirm the judgment of the Appellate Court.

---

[2] "This Court has discretion to rephrase questions presented." *Elsberry v. Stanley Martin Companies, LLC*, 482 Md. 159, 165 n.1, 286 A.3d 1, 4 n.1 (2022) (citation omitted). The original question presented by the County in the Petition for Writ of *Certiorari* is as follows:

1.) Did [the Appellate Court] misconstrue the 1988 deed as a matter of law by failing to consider the language, intent and surrounding circumstances to hold that a "public road" was established on the disputed property, where the road project was no longer feasible and the deed specifically stated that the property was no longer needed for a public road?

Wilkinson's brief includes additional questions regarding the ownership interest of the Property. Ordinarily, "[u]nder our certiorari process, this Court will only consider matters on appeal raised in a petition for writ of certiorari that we have granted." *MAS Assocs., LLC v. Korotki*, 475 Md. 325, 365, 257 A.3d 553, 576 (2021) (internal quotation marks and citation omitted). "[W]e may either limit the issues or add issues which the parties have not presented in certiorari petitions or cross-petitions." *Id.*, 257 A.3d at 576 (internal quotation marks and citation omitted). The determination of the estate interest is material to the parties' interests; therefore, "we shall exercise our discretion to consider this issue." *Id.* at 365–66, 257 A.3d at 577 (internal quotation marks and citation omitted). Accordingly, we have rephrased the original question presented for analytical consistency and clarity.

FACTS AND PROCEDURAL BACKGROUND

*Relevant Facts*

**A.      Factual Background**

1.      The Property

The Property at issue is located within a subdivision known as "Scotland Beach" on a peninsula that borders and extends on the shore of the Chesapeake Bay.  Scotland Beach was recorded at Liber EBA No. 19, Folio 408 and 409, on January 29, 1921, in the land records for St. Mary's County.  The Chesapeake Bay lies to the east and Tanner Creek is along the west.  A copy of the Scotland Beach plat appears in **Appendix A** of this opinion. The Property is approximately 0.196 acres and "eighty (80) feet long at its greatest length, forty (40) feet wide at its widest point, and approximately ten (10) feet wide at its narrowest point."[3]

In 2005, Chesapeake Trails Surveying, LLC, prepared a full boundary survey of the Property, which is included in **Appendix B**.  DH Steffens Company, a surveying consultant company, also prepared an exhibit plat "for informational and display/visualization purposes."  An excerpt of DH Steffens' exhibit plat below depicts the disputed portion of the Property, which is represented by the dashed lines in the yellow-shaded area:

---

[3] The Aikens maintain that this measurement is incorrect because "it fails to include the approximately 20 feet of stone revetment lying upland of high water line[,]" which is "noted on the survey[.]"  As the Appellate Court clarifies, the Property "[a]t its narrowest point, between Wilkinson's property on the western side and the stone revetment on the eastern side, [] is approximately 10 feet wide." *Wilkinson*, 255 Md. App. at 232, 279 A.3d at 1065.



The exhibit plat shows that the Property bisects Wilkinson's property on Lots 17, 18, and 19, and shows Wilkinson's property outlined in bold lines.

### 2. The Bay Front Drive Project

As noted above, the Scotland Beach subdivision was established in the early 1920s. In the 1940s, the State Roads Commission of Maryland, a predecessor agency to the State Highway Administration (the "State"), proposed a series of road projects to construct a seven-mile-long highway, known as "Scotland Beach to Point Lookout," running through the peninsula. The highway was intended to follow along the northern and eastern boundaries of the Scotland Beach subdivision, eventually turning south toward Point Lookout. In addition, the State and the County agreed to extend and improve an internal road, formerly known as "Ed's Road," through the middle of the Scotland Beach

4

subdivision.  Renamed as "Bay Front Drive," the internal road was intended to connect the northern end and southern boundary of the Scotland Beach subdivision.

In October 1944, the State prepared and recorded Plats 1918 and 1919 to "lay out," "establish," and "construct" Bay Front Drive.  Plat 1918 reflects the northern half of Bay Front Drive, starting at Scotland Beach Road, formerly Route 415, to Station Marker 10.  Plat 1918 appears in **Appendix C** to this opinion.  Plat 1919 reflects the southern half of Bay Front Drive, which continues from Station Marker 10 and extends into Scotland Beach Road.  Plat 1919 appears in **Appendix D** to this opinion.  Plats 1918 and 1919 were initially recorded on June 19, 1952, and again on March 26, 1986.

To construct Bay Front Drive, the State acquired property through conveyances and condemnation proceedings from Scotland Beach lot owners, including "Wilkinson's predecessor in interest, Joan Brady."  On July 21, 1945, Ms. Brady deeded portions of her property—Scotland Beach subdivision lots 17, 18, and 19, which includes the Property— to the State for the construction of Scotland Beach to Point Lookout highway and the extension of Bay Front Drive (the "Brady Deed").  The Brady Deed, recorded at CBG 15, folio 137, provided that:

> **WHEREAS**, the State Roads Commission of Maryland, acting for and on the behalf of the State of Maryland, *finds it necessary to acquire land, easements, and or rights, etc., shown and or indicated on State Roads Commission of Maryland's Plat No. 1919* which is duly recorded, or intended to be recorded, among the Land Records of St. Mary's County in the State of Maryland *in order to lay out, open, establish, construct, extend, widen, straighten, grade and improve*, etc., under its Contract BM-154-1-811 and or *improve in any manner a highway and/or bridge, together with the appurtenances thereto belonging known as the Scotland Beach to Point Lookout, as a part of the Maryland State Roads System, and, thereafter use, maintain and/or further improve said highway and/or bridge*, and

5

**WHEREAS**, the laying out of said highway and/or bridge and their appurtenances, in addition to being *required for public convenience*, necessity and safety, is a *material benefit* to the undersigned.

**NOW, THEREFORE, THIS DEED AND RELEASE WITNESSETH**: That for and in consideration of the above premises, One Dollar ($1.00) and other good and valuable considerations, the receipt whereof is hereby acknowledged, we do hereby grant and convey unto the State of Maryland, to the use of the State Roads Commission of Maryland, its successors and assigns, *forever in fee simple*, all our right, title, and interest, *free and clear of liens and encumbrances*, in and to all the land, together with the appurtenances thereto belonging, or in any wise appertaining, *lying between the lines designated "right of way line" as shown and/or indicated on the aforesaid plat*, all of which plat is made a part hereof, so far as our property and/or our rights may be affected by the said proposed highway and/or bridge and the appurtenances thereto belonging, or in any wise appertaining; and, we, for ourselves, our heirs and assigns, do further release the State [] and the State Roads Commission of Maryland . . . from any and all claims or demands . . . for any damages and/or injuries whatsoever caused directly or indirectly by the taking, and use, or improvement, etc., of the land, easements, and/or rights, etc., *for a public highway and/or bridge and their necessary appurtenances, . . . arising out of or caused by the laying out, opening, establishing, constructing, . . . etc., of the said State Highway and/or bridge* and their necessary appurtenances within the area of the land[.]

(Emphasis added). The Brady Deed conveyed Ms. Brady's property to the State "forever in fee simple, . . . free and clear of liens and encumbrances, in and to all the land, . . . lying between the lines designated 'right of way line' as shown and/or indicated on the aforesaid plat [No. 1919.]" The "right of way line[s]" are depicted on Plats 1918 and 1919, an excerpt of which are shown below:

6



The northern portion of Bay Front Drive was constructed, ending around Station Marker 14. In 1954, severe storms, primarily Hurricane Hazel, resulted in severe erosion along the Scotland Beach shoreline. The storms caused large portions of the peninsula and Scotland Beach subdivision, including portions of the Property, to become submerged into the Bay. The construction of the southern portion of Bay Front Drive, notably the planned intersection into Scotland Beach Road, was not completed as a result of the erosion and storm damage. In July 1974, Wilkinson's predecessors in interest granted the County an easement to build and maintain a stone revetment along the shoreline to protect it from further erosion.

### 3. Conveyance to the County

As noted above, the State never completed its highway project. On September 22, 1988, the State conveyed "all right, title and interest . . . in and to all the land, . . . lying between the lines designated 'right of way line' as shown and/or indicated on . . . plats numbered 6016 [], 1918 and 1919," to the County (the "1988 Deed"). The 1988 Deed, entitled "Road Conveyance Deed," provides in part:

7

WHEREAS, the State Highway Administration has agreed, for good and valuable considerations, to convey unto the "GRANTEE(S)" herein, certain land, hereinafter described, which the "Grantor" has determined is no longer needed by it in connection with the construction, operation, maintenance, use and protection of the State Highway Systems[.]

\* \* \*

THE GRANTORS DO HEREBY GRANT AND CONVEY unto St. Mary's County, Maryland *all right, title and interest* of the Grantors in and to all the land, together with the appurtenances thereto belonging, or in anywise appertaining, *lying between the lines designated "right of way line" as shown and/or indicated* on the State Roads Commission of Maryland's plats numbered 6016 (revised 4-25-45), 1918 and 1919, recorded or intended to be recorded among the Land Records of St. Mary's County, Maryland.

CONTAINING: 1.38 acres plus or minus.

BEING ALL OF THE BED of the road known as Bay Front Drive (formerly Ed Road) . . . .

BEING PART OF THE BED of the road known as Scotland Beach Road . . . .

\* \* \*

BEING ALL OF THE LAND which by deed recorded August 14, 1945 among the Land Records of St. Mary's County . . . was conveyed by Joan K. Brady to the State of Maryland to the use of the State Roads Commission of Maryland.[4]

\* \* \*

SUBJECT, HOWEVER, TO EACH AND EVERY RESERVATION, RESTRICTION, CONDITION, COVENANT AND CONTROL SET FORTH IN THIS INSTRUMENT OF WRITING.

(Emphasis added). The 1988 Deed was recorded on December 22, 1988.

---

[4] The 1988 Deed transferred eleven parcels, including the Property.

As the Appellate Court noted, "[a]t some point," the County posted an "End of County Maintenance[]" sign at or near Station Market 14,[5] indicating where the completed, southern end of Bay Front Drive ended. *Wilkinson*, 255 Md. App. at 231, 279 A.3d at 1063. For reference, DH Steffens' exhibit plat highlights in red where the County placed the "End of County Maintenance" sign at Station Marker 14:



Beyond the sign, there is a short gravel area across the Property that is used as a pedestrian footpath to the beach. The County has also utilized the Property and easement to access and maintain the revetment.

_____

[5] The record does not clarify where the County placed Station Marker 14, but the parties, the circuit court, and the Appellate Court agree that it was "at or about Station Marker 14[.]"

### 4.    The 2017 Ordinance

In July 1995, John and Susan Wilkinson purchased Lots 17, 18, and 19[6] and transferred their interest to the Wilkinson Trust in May 2016.  In 2004, the Aikens purchased undeveloped lots to the south of Wilkinson's property and the Property and subsequently transferred their interest to the Aiken Family Trust in May 2016.  After the Aikens purchased their property, disputes arose between the Aikens and Wilkinson concerning the Aikens' right to use the Property for ingress and egress.  Wilkinson placed barriers on the Property to prevent the Aikens from traversing it.  In December 2007, Wilkinson petitioned the County "to close, or not to open," the Property as a road. Specifically, Wilkinson argued that the Property was: (1) not suitable to be used as a road because of the constant flooding and (2) within the Chesapeake Bay Critical Area and in a Limited Development Area Overlay District.

The County held a public hearing on November 15, 2016 "to close a portion of . . . Bay Front [Drive]."  In August 2017, the County adopted Ordinance No. 2017-23 titled "[AN ORDINANCE] TO CLOSE BAY FRONT DRIVE (EXTENDED), LOCATED IN THE FIRST (1ST) ELECTION DISTRICT OF ST. MARY'S COUNTY, MARYLAND" (the "2017 Ordinance") to close Bay Front Drive.  In the recitals contained in the 2017 Ordinance, the County noted that it is "authorized to open, alter or close certain public roads" within the County pursuant to Chapter 109 of the County Code, and stated that the County "initiated a proposal that a portion of the right of way designated as Bay Front

---

[6] According to Wilkinson, his original purchase "included Lots, 17, 18, 19, and 20[,]" but Lot 20, and "most of Lot 19[,]" is now "completely submerged."

10

Drive, a public road, . . . be closed[.]" Prior to its adoption, the 2017 Ordinance was advertised and a public hearing was held on November 16, 2016. The 2017 Ordinance stated that the County "determined that the public interest will best be served by closing the said portion of Bay Front Drive[,]" and identified, by a metes and bounds description, the portion of Bay Front Drive that was closed. After the 2017 Ordinance was adopted, it was recorded in the land records of St. Mary's County at Liber 0025, Folio 306.

### *Legal Proceedings*

#### A.    Circuit Court Proceedings

On November 13, 2018, Wilkinson filed suit against the County in the Circuit Court for St. Mary's County, asserting ownership of the Property based upon theories of adverse possession, abandonment, and estoppel. In May 2019, Wilkinson amended his complaint, retaining only a claim for declaratory judgment. The County filed a counter-complaint against Wilkinson, seeking a declaratory judgment that it owns the Property in fee simple.

In 2019, the Aikens intervened as defendants and filed a combined cross and counter complaint, asserting various causes of action against both the County and Wilkinson. The Appellate Court provided the following succinct summary of the Aikens' claims:

> Count I sought a declaratory judgment that the Aikens have a right to use Bay Front Drive to access their own property, to "require the County to keep the entire remaining width of Bay Front Drive open for ingress and egress," and to prohibit Wilkinson from interfering with the Aikens' right to use the [] [P]roperty. Count II sought to quiet title to the Aikens' property (alleged to be Lots 23, 24, and 25) and for the court to "declare that the Aikens are the absolute owners in fee simple of all of the Aiken property, subject only to the County's easements." Count II also admitted that the County "maintains an easement over the Aiken property in order to maintain the erosion control systems on the property." Count III sought injunctive relief, requiring the County to keep the alleged public road over the [] [P]roperty

11

"open for ingress and egress" and prohibiting Wilkinson from blocking the alleged public road. Count IV alleged that, if the County "caused the public's and the Aiken's easement over Bay Front Drive to be lost," this constitutes a taking and that the Aikens should be compensated for the loss of value to their property. Count V asserted interference with easement, which sued the County in tort for allegedly failing to consistently remove barriers repeatedly erected by Wilkinson on the alleged public road and sued Wilkinson for compensatory and punitive damages for interference with the Aikens' alleged easement.

*Wilkinson*, 255 Md. App. at 234–35, 279 A.3d at 1065–66.

The parties filed cross motions for summary judgment in September 2019. The circuit court conducted a motions hearing on October 11, 2019. Following the hearing, the circuit court issued a memorandum opinion and order on June 19, 2020. The court determined that there were "no material facts in dispute" and that it "may decide all issues presented as a matter of law." The court granted the County's motion for summary judgment with respect to Wilkinson's claim for declaratory judgment. The circuit court further granted the County's motion for summary judgment with respect to all claims asserted by the Aikens against the County (Counts I, III, IV, and V). As between Wilkinson and the Aikens, the court denied the Aikens' motion for summary judgment on Count II (quiet title) and dismissed the claim without prejudice. With respect to the Aikens' claims against Wilkinson in Counts III and V, the court granted summary judgment in favor of Wilkinson. As relevant here, the circuit court determined that: (1) the County owns the Property in fee simple, "free and clear of any and all claims, easements, liens[,] and encumbrances"; (2) "[n]either [Wilkinson] nor the Aikens ha[ve] any private property interest in or with respect to the [] [P]roperty[;]" and (3) the Property is "not a public road, as a matter of law." Regarding the public road, the court determined that "[t]here was no

12

dedication of the [P]roperty as a public road, nor was there an acceptance of that dedication by competent authority." The court also recognized that "[t]here has only been public pedestrian use of the disputed land to traverse the [] [P]roperty to get to the beach and use of the [P]roperty by the County to access the revetment for maintenance[]" and that such "public use does not transmorph [sic] the area into an alleged public road[.]" Thereafter, Wilkinson and the Aikens appealed to the Appellate Court of Maryland in June 2020.

### B.        Opinion of the Appellate Court of Maryland

On July 28, 2022, the Appellate Court affirmed in part and vacated in part the decision of the circuit court and remanded for further proceedings. *Wilkinson*, 255 Md. App. at 270, 279 A.3d at 1087. The Appellate Court held, in relevant part, that the circuit court: (1) "did not err in determining that the County owns the [] [P]roperty in fee simple [absolute]" and (2) "erred in determining that there was no public road south of Station Marker 14[.]" *Id.* at 270, 279 A.3d at 1087.

First, Wilkinson argued that the Brady Deed was "ambiguous" and "granted an easement to construct and maintain Scotland Beach Road and Bay Front Drive[.]" *Id.* at 238, 279 A.3d at 1068. In the alternative, Wilkinson asserted that the Brady Deed "was conveyed in fee simple determinable rather than fee simple absolute." *Id.*, 279 A.3d at 1068. The County maintained it owns the Property in fee simple absolute and that Wilkinson's fee simple determinable argument "was not preserved." *Id.*, 279 A.3d at 1068.

The Appellate Court rejected the arguments advanced by Wilkinson that the Brady Deed conveyed to the State an interest less than fee simple absolute. *Id.*, 279 A.3d at 1068. The Appellate Court considered the express language in the Brady Deed and concluded

13

that the Brady Deed's "terms are unambiguous in that it did not create an easement over the [] [P]roperty, but rather, conveyed the [] [P]roperty to the State in fee simple absolute." *Id.* at 239, 279 A.3d at 1068. The language, such as "*grant* and convey unto the State . . . *forever in fee simple*," indicated to the Appellate Court that the Brady Deed "conveyed the entire interest [] to the State[.]" *Id.* at 245, 279 A.3d at 1072. As such, the court rejected Wilkinson's suggestion that the court should consider extrinsic evidence to support his argument that the deed conveyed an easement over the Property. *Id.* at 241, 279 A.3d at 1070. The court also rejected Wilkinson's argument that the Brady Deed created or conveyed an easement. *Id.* at 238–39, 279 A.3d at 1068. To the Appellate Court, "[t]he Brady [D]eed contained no language creating a right to use the [] [P]roperty as a right-of-way." *Id.* at 240, 279 A.3d at 1069. Rather, the language used "was merely the legal description[]" of the Property. *Id.*, 279 A.3d at 1069. The court similarly rejected Wilkinson's argument that the Brady Deed conveyed the Property in fee simple determinable rather than fee simple absolute. *Id.* at 243, 279 A.3d at 1071. According to the Appellate Court, "a statement of purpose does not automatically create a fee simple determinable[]" or "debase" a fee simple absolute. *Id.*, 279 A.3d at 1071 (internal quotation marks and citations omitted). The court further observed that "there is no express reversion of property interest nor reversionary clause in the Brady [D]eed." *Id.* at 244, 279 A.3d at 1071. Accordingly, the Appellate Court held that the County owns the Property in fee simple absolute and that the circuit court correctly granted the County's motion for summary judgment on its declaratory judgment claim and correctly denied Wilkinson's motion for summary judgment. *Id.* at 245, 279 A.3d at 1072.

14

The Appellate Court next considered the issues raised in the Aikens' cross-appeal pertaining to the Property's status as a public road. The County argued "that no public road exists on the [] [P]roperty[,]" a position upon which Wilkinson agreed. *Id.*, 279 A.3d at 1072. The Aikens argued "that the circuit court erred in determining that no public road was established or exists south of Station Marker 14." *Id.*, 279 A.3d at 1072. The Appellate Court agreed with the Aikens, concluding that, as a matter of law, "a public road was created by dedication," *Id.* at 246, 279 A.3d at 1072, and that the circuit court erred in determining that no public road was established after Station Marker 14, *Id.* at 245, 279 A.3d at 1072.

The Appellate Court extensively discussed the manner in which a public road is created by dedication. *Id.* at 248, 279 A.3d at 1073–79 (noting that "a completed common law dedication requires an offer and acceptance." (internal quotation marks and citation omitted) (cleaned up)). To the court, the Brady Deed and Plat 1919, which was incorporated into the Brady Deed, "constitute[d] clear and unequivocal evidence of an offer" by Ms. Brady to dedicate the Property for public use. *Id.* at 250, 279 A.3d at 1075. The Appellate Court determined that the State "accepted the offer to dedicate the [] [P]roperty to public use[,]" and the 1988 Deed "further [] support[s]" this conclusion. *Id.* at 252–53, 279 A.3d at 1076–77. The Appellate Court explained that:

> The State . . . assumed control of the [] [P]roperty via the [Brady] [D]eed. The [] [P]roperty was conveyed to the State . . . "as part of the Maryland State Roads System," to "use, maintain and/or further improve said highway and/or bridge." The [] [P]roperty remained in the State's control until 1988, when it transferred its obligations to the County.

15

*Id.* at 254, 279 A.3d at 1077 (internal citations omitted). Even if "the land conveyed was 'no longer needed by [the State] in connection with the construction, operation, maintenance, use and protection of the State Highway System,' . . . the land was conveyed to the County for a transportation purpose." *Id.* at 255, 279 A.3d at 1078 (emphasis omitted). Thus, the Appellate Court concluded that the State conveyed the Property as a public road. *Id.*, 279 A.3d at 1078. The court also pointed out that the 1988 Deed expressly referenced plats 1918, 1919, and 6016 "to describe the land conveyed, which depict[ed] the *entirety* of Bay Front Drive, including the portion constituting the [] [P]roperty." *Id.*, 279 A.3d at 1078 (emphasis added) (citation omitted). The Appellate Court also determined that, under the express language of the 1988 Deed, the County "accepted the 1988 [D]eed subject to 'each and every reservation, restriction, condition, covenant and control set forth in this instrument of writing.'" *Id.*, 279 A.3d at 1078. Therefore, the court concluded the circuit court erred in finding that no public road was created south of Station Marker 14. *Id.* at 258, 279 A.3d at 1080.

Consequently, the Appellate Court held the circuit court erred in granting the County's motion for summary judgment with respect to the Aikens' Counts I, III, IV, and V because those claims "are premised on the existence of a public road." *Id.*, 279 A.3d at 1079–80. For the same reason, the court determined that the circuit court erred in granting summary judgment in favor of Wilkinson as to the Aikens' Counts III and V. *Id.*, 279 A.3d at 1079–80. Accordingly, the Appellate Court "vacate[d] and remand[ed] for further proceedings on the Aikens' Counts I and III as against both the County and Wilkinson, County IV as against the County, and Count V as against Wilkinson." *Id.*, 279 A.3d at

16

1079–80 (footnotes omitted). The Appellate Court stated that on remand, the circuit court "should take into consideration that the portion of Bay Front Drive over the [] [P]roperty was statutorily closed in 2017."[7] *Id.*, 279 A.3d at 1079–80.

The County filed a petition for writ of *certiorari*, which we granted on November 18, 2022. *Bd. of Cnty. Comm'rs of St. Mary's Cnty. v. Aiken*, 482 Md. 143, 285 A.3d 849 (2022).

### *The Contentions of the Parties*

#### A.     The County

The County agrees with the Appellate Court that the Brady Deed conveyed the Property to the State in fee simple absolute. The County asserts that the Appellate Court erred in concluding that the 1988 Deed created a "dedication of a public road" based on the deed's language, intent, and surrounding facts and circumstances. To the County, the Appellate Court "[m]isconstrued" that the "land was conveyed for a transportation purpose[.]" Rather, the County contends the offer was "to deed the leftover land from a former State road project that was no longer possible to the County. Thus, the County could not have accepted a dedication as a 'public road' by accepting the [1988] [D]eed." Finally, the County argues that the 2017 "Ordinance was unnecessary and immaterial[]" because it "could not ratify something that never occurred[.]" The County, therefore, asks

---

[7] The Appellate Court also addressed the Aikens' quiet title (Count II) and tortious interference (Count V) claims. *Wilkinson*, 255 Md. App. at 259, 265, 279 A.3d at 1080, 1084. However, these claims were not raised before this Court in either the parties' briefs or the writ of *certiorari*. Accordingly, we omit the Appellate Court's discussion on these issues. *See* Md. Rule 8-131.

this Court to reinstate "the [circuit] court's grant of summary judgment in favor of the County with respect to the Aikens' claims in Counts I (declaratory judgment), III (injunctive relief), and IV (inverse condemnation), which were all premised on the existence of a public road on the [] [P]roperty."

**B.     Wilkinson**

Wilkinson first argues that the circuit court and Appellate Court erred in determining that the Brady Deed conveyed title to the Property to the State in fee simple absolute. Wilkinson asserts that "the Brady Deed is ambiguous[]" and the circuit court should have considered "extrinsic evidence[.]" To Wilkinson, the Brady Deed "conveyed an easement for a specific purpose: to extend Bay Front Drive to connect with Scotland Beach Road, which was later made impossible due to storms and erosion." Alternatively, Wilkinson maintains that, even if the Brady Deed granted a conveyance in fee simple, "the conveyance was made in **fee simple *determinable***, not in fee simple absolute." Finally, Wilkinson asserts that the Property "was never a public road and cannot be made one now[]" because "there is insufficient dry land remaining to create a road."

**C.     The Aikens**

The Aikens largely agree with the Appellate Court, asserting that it correctly determined that "[t]he County took title via a 'Road Conveyance Deed'" to the Property and that a public road exists south of Station Marker 14. The Aikens, however, assert that the dedication analysis of the Appellate Court "added an unnecessary analytical layer . . . by incorrectly focusing on dedication[.]" Rather, the Aikens ask this Court to "save future parties, counsel and courts a great deal of unnecessary money and ink" by holding that

18

"Bay Front Drive was established as a public road in 1952 by the State" by way of filing the "official plats in the land records."

### *Standard of Review*

Summary judgment is proper when "there is no genuine dispute as to any material fact and that the [moving] party is entitled to judgment as a matter of law." Md. Rule 2-501(a). "We review the circuit court's grant of summary judgment *de novo*." *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 297, 281 A.3d 876, 889 (2022). "We conduct an independent review of the record to determine whether a general dispute of material facts exists and whether the moving party is entitled to judgment as a matter of law." *Id.*, 281 A.3d at 889 (citation omitted). This Court "do[es] not endeavor to resolve factual disputes, but merely determine[s] whether they exist and are sufficiently material to be tried." *Id.*, 281 A.3d at 889 (citation omitted). "In reviewing a declaratory judgment entered pursuant to a motion for summary judgment, we determine whether it was correct as a matter of law and accord no deference to the [circuit] court's legal conclusions." *Emerald Hills Homeowners' Ass'n, Inc. v. Peters*, 446 Md. 155, 161, 130 A.3d 469, 473 (2016) (citation omitted). The construction or interpretation of a deed is a question of law and subject to *de novo* review. *White v. Pines Cmty. Improvement Ass'n, Inc.*, 403 Md. 13, 31, 939 A.2d 165, 175 (2008) (citations omitted); *Calvert Joint Venture # 140 v. Snider*, 373 Md. 18, 38, 816 A.2d 854, 865 (2003).

19

*Analysis*

A.   **The Appellate Court Correctly Held that the County Owns the Property in Fee Simple Absolute.**

We begin by reviewing the principles that govern the interpretation of deeds. We apply "basic principles of contract interpretation" when "construing the language of a deed[.]" *Md. Agric. Land Pres. Found. v. Claggett*, 412 Md. 45, 62, 985 A.2d 565, 575 (2009) (internal quotation marks and citation omitted); *Miller v. Kirkpatrick*, 377 Md. 335, 351, 833 A.2d 536, 545 (2003); *Snider*, 373 Md. at 38, 816 A.2d at 865. The language of the deed "itself is of foremost importance[.]" *Claggett*, 412 Md. at 62, 985 A.2d at 576 (citation omitted). "The principles of deed construction require [] consideration of 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution[.]'" *Id.* at 63, 985 A.2d at 576 (quoting *Chevy Chase Land Co. v. United States*, 355 Md. 110, 123, 733 A.2d 1055, 1062 (1999)). To determine the "extent of an estate or interest granted by a deed," we construe the deed "so as to best effectuate the intention of the parties." *Green v. Eldridge*, 230 Md. 441, 447, 187 A.2d 674, 677 (1963); *Snider*, 373 Md. at 46, 816 A.2d at 870; *Cnty. Comm'rs of Charles Cnty. v. St. Charles Assocs. Ltd. P'ship*, 366 Md. 426, 463, 784 A.2d 545, 567 (2001) ("Likewise, there is an equal abundance of Maryland case law directing the Court to strongly consider the intention of the parties." (citations omitted)). In doing so, we "consider the deed as a whole, viewing its language in light of the facts and circumstances of the transaction at issue as well as the governing law at the time of conveyance." *Chevy Chase Land*, 355 Md. at 123, 733 A.2d at 1062; *Brown v. Reeder*, 108 Md. 653, 71 A. 417, 419 (1908)

20

("[W]e are not [] to confine ourselves to a single word or phrase, but to ascertain if possible the intention of the parties, and especially of the grantor, by considering the whole deed[.]" (citation omitted)).

When the language of the deed "is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Claggett*, 412 Md. at 63, 985 A.2d at 576 (internal quotation marks and citation omitted). If a deed is unambiguous, then we construe it without examining extrinsic evidence. *See Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 56, 73 A.3d 224, 235 (2013); *Olde Severna Park Improvement Ass'n, Inc. v. Gunby*, 402 Md. 317, 332 n.9, 936 A.2d 365, 373 n.9 (2007) ("As we have found no ambiguity, however, consideration of extrinsic documents is unnecessary."); *Gilchrist v. Chester*, 307 Md. 422, 425, 514 A.2d 483, 484 (1986) ("[I]f the deed in question [is] clear and unambiguous, in the absence of fraud and mistake," then there is "no need to construe it through the use of extrinsic evidence."). Extrinsic evidence should only be used if the language in the deed is rendered ambiguous. *Dumbarton Improvement Ass'n*, 434 Md. at 56, 73 A.3d at 235 (citation omitted). Accordingly, "the clear and unambiguous language of an agreement will not give [way] to what the parties thought that the agreement meant or intended it to mean." *White*, 403 Md. at 32, 939 A.2d at 176 (internal quotation marks and citations omitted).

"The Real Property Article of the Maryland Code sets forth the language to be included in a deed when a grantor conveys a fee simple interest in property to a grantee." *Mayor & City Council of Balt. v. Thornton Mellon, LLC*, 478 Md. 396, 414, 274 A.3d 1079,

21

1089 (2022) (citation omitted). "Unless a contrary intention appears by express terms or is necessarily implied, every grant of land passes a fee simple estate." *Id.*, 274 A.3d at 1089 (citation omitted); Md. Code Ann., Real Property ("Real Prop.") § 2-101 ("The word 'grant' . . . in a deed, or any other words purporting to transfer the whole estate of the grantor, passes to the grantee the whole interest and estate of the grantor . . . unless a limitation or reservation shows . . . a different intent."). A fee simple interest in land is the "broadest property interest allowed by law[.]" *Fee Simple, Black's Law Dictionary* (11th ed. 2019). "The owner of a fee simple estate has absolute and exclusive control and dominion over the property." *Thornton Mellon*, 478 Md. at 414, 274 A.3d at 1089 (citations omitted).

The Restatement of Property explains that an estate in fee simple "includes the estate in fee simple absolute . . . and all types of estates in fee simple defeasible[.]" Restatement (First) of Property § 14 cmt. a (1936). An estate in fee simple absolute is "[a]n estate of indefinite or potentially infinite duration[.]" *Fee Simple Absolute*, *Black's Law Dictionary* (11th ed. 2019); Restatement (First) of Property § 14 cmt. a. "An estate in fee simple defeasible is an estate in fee simple which is subject to a special limitation[,]" including a fee simple determinable. Restatement (First) of Property § 16 cmt. c. "An estate in fee simple determinable is created by any limitation which, in an otherwise effective conveyance of land, . . . provides that the estate shall automatically expire upon the occurrence of a stated event." *Id*. § 44(b). Upon the occurrence of such event, an estate in fee simple determinable "will automatically end and revert to the grantor[.]" *Fee Simple Determinable*, *Black's Law Dictionary* (11th ed. 2019); *Lovell Land, Inc. v. State Highway*

22

*Admin.*, 408 Md. 242, 258 n.5, 969 A.2d 284, 293 n.5 (2009) (citations omitted).  Thus, the

grantor retains a possibility of reverter[8] to "re-acquir[e] the land by reason of the occurrence

of the contingency named or indicated[.]"  *Mayor & City Council of Ocean City v. Taber*,

279 Md. 115, 128, 367 A.2d 1233, 1240 (1977) (citation omitted); *Lovell Land*, 408 Md.

at 258 n.5, 969 A.2d at 293 n.5.  Against this backdrop, our first task is to determine the

type of interest conveyed by the Brady Deed.

The plain language of the Brady Deed expressly states that the Property was

transferred to the State in fee simple:

> **NOW, THEREFORE, THIS DEED AND RELEASE WITNESSETH**:
> That for and in consideration of the above premises, . . . we do hereby *grant
> and convey* unto the State of Maryland, to the use of the State Roads
> Commission of Maryland, its successors and assigns, *forever in fee simple,
> all our right, title, and interest, free and clear of liens and encumbrances, in
> and to all the land, together with the appurtenances thereto belonging, or in
> any wise appertaining, lying between the lines designated "right of way line"
> as shown and/or indicated on the aforesaid plat*, all of which plat is made a
> part hereof, so far as our property and/or our rights may be affected by the
> said proposed highway and/or bridge and the appurtenances thereto
> belonging, or in any wise appertaining[.]

(Emphasis added).  The relevant verbiage "grant and convey[,]" "forever in fee simple,"

"all our . . . interest," and "all the land," indicates the intent of the Brady Deed to convey a

fee simple absolute interest in the Property.  *See* Real Prop. § 2-101.  Similarly, the Brady

Deed conveyed "all the land, together with the appurtenances thereto belonging, or in any

wise appertaining, lying between the lines designated 'right of way line' as shown and/or

indicated on the aforesaid plat [1919 and 1918.]"  The language in the Brady Deed

---

[8] "[A] reversion arises whenever the owner of real estate devises or conveys an interest in it less than his own."  *Taber*, 279 Md. at 128 n.5, 367 A.2d at 1240 n.5.

23

"clear[ly] and unambiguous[ly]" intends to convey the entire interest in the Property in fee simple absolute. *Gilchrist*, 307 Md. at 425, 514 A.2d at 484. Contrary to Wilkinson's assertion, we find the language in the Brady Deed to be unambiguous. Additionally, Wilkinson has not alleged any "fraud or mistake here, nor do we see any evidence thereof." *Id.*, 514 A.2d at 484. We, therefore, need not resort to extrinsic evidence. *See Dumbarton Improvement Ass'n*, 434 Md. at 56, 73 A.3d at 235.

Wilkinson further maintains that the Brady Deed conveyed an easement rather than an estate in fee simple. We disagree. As noted above, the language in the Brady Deed clearly and unequivocally conveyed the land to the State in fee simple. The Brady Deed did not convey an easement. "An easement is broadly defined as a nonpossessory interest in the real property of another, . . . and arises through express grant or implication." *Boucher v. Boyer*, 301 Md. 679, 688, 484 A.2d 630, 635 (1984) (citations omitted). "An express easement by reservation arises when a property owner conveys part of [their] property to another, but includes language in the conveyance reserving the right to use some part of the transferred land as a right-of-way." *Miller*, 377 Md. at 349, 833 A.2d at 544 (citation omitted). Under an easement by reservation, "the land remains the property of the owner of the servient estate, and he is entitled to use it for any purpose that does not interfere with the easement." *Id.*, 833 A.2d at 544 (internal quotation marks and citation omitted). Generally, "the terms 'easement' and 'right-of-way' are regarded as synonymous." *Id.*, 833 A.2d at 544 (citation omitted). "[W]hen a deed conveying a right-of-way fails to express a clear intent to convey a different interest in land, a presumption arises that an easement was intended." *Chevy Chase Land*, 355 Md. at 128, 733 A.2d at

24

1064. It follows "that where the deed is ambiguous *and* the granting clause is not specific, references to the interest being conveyed as a right-of-way gives rise to a presumption that an easement was intended." *Id.*, 733 A.2d at 1064 (internal quotation marks and citations omitted).

Here, the language in the Brady Deed was unambiguous and provided no "presumption that an easement was intended." *Id.*, 733 A.2d at 1064 (internal quotation marks and citations omitted). Rather, the Brady Deed simply described the Property as "all the land, together with the appurtenances thereto belonging, or in any wise appertaining, lying between the lines designated 'right of way line' as shown and/or indicated on the aforesaid plat [1919 and 1918.]" This language was used as a legal description, not to establish the interest granted.[9] *Id.* at 132, 733 A.2d at 1066–67

---

[9] Wilkinson contends that the State "abandoned the Bay Front Drive [p]roject in 1955 as part of its overall abandonment of the Scotland Beach Road Project." According to Wilkinson, the State's abandonment "created a reasonable belief that those entities did not intend to make use of the easement[.]" Thus, Wilkinson maintains that the State and the Aikens are estopped from asserting any interest in the Property. Because we hold that the Property was conveyed in fee simple absolute, we decline to address Wilkinson's abandonment and estoppel claims. Abandonment does not divest fee simple title to real property. *See Md. & Pa. R.R. Co. v. Mercantile-Safe Deposit & Tr. Co.*, 224 Md. 34, 39, 166 A.2d 247, 250 (1960) ("[T]he right and title to a *mere* easement in land acquired . . . for a public purpose is dependent upon the continued use of the property for that purpose, and when such public use is abandoned the right to hold the land ceases, and the property reverts to its original owner or his successors in title." (citations omitted)); *see also Chevy Chase Land*, 355 Md. at 158, 733 A.2d at 1081 (citation omitted); 1 Maryland Law Encyclopedia, *Abandonment and Escheat* § 3. Thus, as the Appellate Court observed, "because we conclude that no easement over the [] [P]roperty was conveyed, there is consequently no easement to be terminated by estoppel." *Wilkinson*, 255 Md. App. at 241 n.9, 279 A.3d at 1070 n.9.

25

("Language used in a descriptive clause is less important than the language of the granting clause in denoting what interest in land is conveyed by a deed." (citation omitted)).

Finally, we address Wilkinson's argument that, even if the Property was conveyed as a fee simple estate, it was conveyed as a fee simple determinable. In support of his contention, Wilkinson maintains that the conveyance was specifically for the purpose of constructing Bay Front Drive. Since this "event" did not occur, Wilkinson insists that the interest reverted to him. We disagree. The Brady Deed did not convey the Property in fee simple determinable. A clause in a deed that states "that [a] property is conveyed for public purposes does not qualify or limit the estate conveyed[.]" *Gilchrist*, 307 Md. at 426, 514 A.2d at 485 (citation omitted); *Stuart v. City of Easton*, 170 U.S. 383, 394, 18 S. Ct. 650, 654 (1898) ("[T]he mere expression of a purpose will not of and by itself debase a fee." (internal quotation marks and citation omitted)). As we explained in *Sands v. Church of Ascension & Prince of Peace*:

> [W]hen the language of an instrument does not clearly indicate the grantor's intention that the property is to revert to [them] in the event it is diverted from the declared use, the instrument does not operate as a restraint upon alienation of the property, but merely expresses the grantor's confidence that the grantee will use the property so far as may be reasonable and practicable to effect the purpose of the grant.

181 Md. 536, 542, 30 A.2d 771, 775 (1943) (citation omitted).

While we acknowledge that the Brady Deed contained recitals reflecting that the land was being conveyed to the State "in order to . . . construct[] . . . and or improve . . . a highway and/or bridge, . . . as a part of the Maryland State Roads System, and, thereafter use, maintain and/or further improve said highway and/or bridge[] . . . for public

26

convenience[,]" this purpose "does not qualify or limit the estate conveyed[.]" *Gilchrist*, 307 Md. at 426, 514 A.2d at 485 (citation omitted). Just because the Brady Deed "was to be used for a certain purpose does not make the estate conveyed an estate on condition." *Rydzewski v. Vestry of Grace & St. Peter's Church*, 145 Md. 531, 125 A. 717, 718 (1924); *Columbia Bldg. Co. v. Cemetery of the Holy Cross*, 155 Md. 221, 141 A. 525, 528 (1928). The language of the Brady Deed does not suggest the parties intended to create a reversionary interest or conveyance other than a fee simple absolute. *See Cemetery of the Holy Cross*, 155 Md. 221, 141 A. at 528 ("[T]he land was granted . . . 'to be held and used as a cemetery,' but [the deed] contains nothing which indicates an intention on the part of the grantors that in the event [of] changed conditions . . . it should revert to . . . the grantor . . . ."). Reading such a condition or qualification into the Brady Deed "is in direct conflict with the language[,]" as the Brady Deed intended to convey the entirety of Ms. Brady's interest. *Gilchrist*, 307 Md. at 426, 514 A.2d at 485; *Taber*, 279 Md. at 128 n.5, 367 A.2d at 1240 n.5. Again, the 1988 Deed conveyed to the County "all right, title and interest of the Grantors in and to all the land, together with the appurtenances thereto belonging, . . . lying between the lines designated 'right of way line' as shown and/or indicated on the . . . plats numbered . . . 1918 and 1919[.]" The 1988 Deed expressly describes that the land conveyed from the State to the County was "ALL OF THE LAND . . . conveyed by Joan K. Brady to the State of Maryland[.]" It follows that the 1988 Deed conveyed the entire interest from the State to the County in fee simple absolute.

Accordingly, we affirm the holding of the Appellate Court that the circuit court "did not err in granting the County's motion for summary judgment on its declaratory judgment

claim and did not err in denying Wilkinson's motion for summary judgment." *Wilkinson*, 255 Md. App. at 245, 279 A.3d at 1072.

      **B.**     **The Appellate Court Correctly Held that a Public Road Was Established on the Property South of Station Marker 14 by Dedication.**

For the reasons set forth below, we agree with the Appellate Court that a public road was established over the Property by dedication. In Maryland, public roads are established by: (1) public authority, (2) dedication, or (3) prescriptive easement.[10] *Clickner v. Magothy River Ass'n Inc.*, 424 Md. 253, 269, 35 A.3d 464, 474 (2012) (quoting *Thomas v. Ford*, 63 Md. 346, 352 (1885)). We do not address the third method, prescriptive easement, because it was not raised before this Court. *See* Md. Rule 8-131. As the Appellate Court noted, our case law regarding public authority and dedication has caused confusion among the parties and the circuit court. *Wilkinson*, 255 Md. App. at 246, 279 A.3d at 1072–73. We clarify these methods of establishing a public road below.

---

[10] Establishing a public road by prescriptive easement requires evidence of "adverse, exclusive, and uninterrupted use of another's real property for twenty years." *Breeding v. Koste*, 443 Md. 15, 19, 115 A.3d 106, 108 (2015) (citation omitted). Continuous, open, exclusive, and adverse use of property for twenty years "without explanation" generates a presumption "that the use has been adverse under a claim of right." *Clickner*, 424 Md. at 281, 35 A.3d at 481–82 (citations omitted). Where a county holds property "in a governmental capacity" or in "a public trust," that property "cannot be disposed of without special statutory authority." *Siejack v. City of Balt.*, 270 Md. 640, 645, 313 A.2d 843, 846 (1974) (internal quotation marks and citations omitted).

28

## 1. Public Authority

State governments or municipalities may create a public road through condemnation proceedings[11] pursuant to their public authority, *i.e.*, eminent domain. *Thomas*, 63 Md. at 355 ("The existence of an ordinary highway over the land of an owner, whether it had its origin by condemnation, . . . does not divest [them] of the property in the soil."); *Chesapeake & Potomac Tel. Co. v. Mackenzie*, 74 Md. 36, 47, 21 A. 690, 693 (1891) ("And so the condemnation of private property for a highway subjects the land so taken merely to an easement in favor of the public, and does not divest the owner of the fee." (citation omitted)); *Anderson v. Great Bay Solar I, LLC*, 243 Md. App. 557, 593, 221 A.3d 1050, 1072 (2019) ("[W]here land is appropriated to the public use under the right of eminent domain, the public authority generally is limited to their precise needs." (internal quotation marks and citation omitted)). "Since . . . the general public [is] entitled to use [] public highway[s], street[s], or road[s], this Court has, without exception, held that condemnation for such purposes is constitutionally authorized." *Green v. High Ridge Ass'n, Inc.*, 346 Md. 65, 75, 695 A.2d 125, 130 (1997).

---

[11] "Condemnation is a function of the State's power of eminent domain[,]" which is "[t]he inherent power of a governmental entity to take privately owned property, esp[ecially] land, and convert it to public use, subject to reasonable compensation for the taking." *Mayor & City Council of Balt. City v. Valsamaki*, 397 Md. 222, 241, 916 A.2d 324, 335 (2007) (internal quotation marks and citation omitted); *see* Md. Const. art. III, § 40. Although condemnation proceedings are treated as civil actions, they are "special proceedings" because they are "brought pursuant to the power of eminent domain[.]" *Montgomery Cnty. v. Soleimanzadeh*, 436 Md. 377, 388, 82 A.3d 187, 194 (2013) (internal quotation marks and citation omitted).

This case does not involve condemnation proceedings where the State had acquired the Property. As a result, no public road was established by public authority. Instead, Ms. Brady conveyed the Property to the State in fee simple absolute, "for public convenience, necessity[,] and safety," which provided the parties with a "material benefit[.]" Thus, as explained below, this case fits squarely within this Court's jurisprudence regarding common law dedications. *Maryland-Nat'l Cap. Park & Plan. Comm'n v. Town of Washington Grove*, 408 Md. 37, 75–76, 968 A.2d 552, 575 (2009) (noting that dedications exist where a landowner grants a government entity an easement for public use).

### 2. Dedication

In *City of Annapolis v. Waterman*, we described common-law dedications as follows:

> Generally, common-law dedications are voluntary offers to dedicate land to public use, and the subsequent acceptance, in an appropriate fashion, by a public entity. Common-law dedications are not mandated by statute. The offers are generally, although not exclusively, made by showing roads, parks or similar facilities on plats without any limitations on dedication, and the recording of those plats. Generally, acceptance is made by an express recorded document or by the appropriate entity assuming control and maintenance of the property offered. With acceptance, common-law dedication is complete.

357 Md. 484, 503–04, 745 A.2d 1000, 1010 (2000). Thus, dedication requires: (1) an offer to dedicate and (2) an acceptance of that offer. *Id.* at 504, 745 A.2d at 1010; *Town of Glenarden v. Lewis*, 261 Md. 1, 2, 273 A.2d 140, 141 (1971) (citations omitted).

To create a public road by dedication, "no particular form or ceremony is necessary[.]" *Smith v. Shiebeck*, 180 Md. 412, 419, 24 A.2d 795, 800 (1942). Rather, the

30

key "ingredient" is the landowner's intent to dedicate the property to public use.[12] *Hillshire Dev. Corp. v. Pachuta*, 235 Md. 178, 181, 201 A.2d 1, 3 (1964) (citation omitted); *Blank v. Park Lane Ctr., Inc.*, 209 Md. 568, 574–75, 121 A.2d 846, 848 (1956) (noting that the "governing test[]" is the landowner's unambiguous intent to "dedicate [their] land to the particular [public] use" (internal quotation marks and citations omitted)). The landowner's intent in dedicating their property "must be ascertained from [their] declarations and acts[,]" *N. Beach v. N. Chesapeake Beach Land & Improvement Co. of Calvert Cnty.*, 172 Md. 101, 114, 191 A. 71, 77 (1937), and must be "clearly manifest[ed,]" *Conway v. Bd. of Cnty. Comm'rs for Prince George's Cnty.*, 248 Md. 416, 419, 237 A.2d 9, 11 (1968) (internal quotation marks and citation omitted). Absent language showing a contrary intent, the intent to dedicate may be "'presumed'" when a landowner makes a plat of their property depicting streets or public roads and subsequently conveys that property. *Farrell v. Phillips*, 94 Md. App. 152, 155, 616 A.2d 437, 439 (1992) (quoting *Mauck v. Bailey*, 247 Md. 434, 443, 231 A.2d 685, 690 (1967)); *see also Windsor Resort Inc. v. Mayor & City Council of Ocean City*, 71 Md. App. 476, 486, 526 A.2d 102, 107 (1987) (holding that the creation of a plat of land depicting streets and the "concurrent conveyance of that property constituted an offer to dedicate").

---

[12] Ordinarily, "[w]hen a parcel of land is dedicated as a street or for other public use, the owner of the land retains his fee simple interest, subject to an easement for the public." *Maryland-Nat'l Cap. Park & Plan. Comm'n v. McCaw*, 246 Md. 662, 675, 229 A.2d 584, 591 (1967) (citations omitted); *Waterman*, 357 Md. at 506, 745 A.2d at 1011 (citation omitted). As we previously determined, the Brady Deed did not demonstrate Ms. Brady's intent to retain the Property's interest in fee simple, subject to an easement. Rather, the Brady Deed conveyed the Property "forever in fee simple, . . . free and clear of liens and encumbrances, in and to all the land[.]"

The landowner or their successors in interest may modify or revoke the offer until it is accepted. *Lewis*, 261 Md. at 4, 273 A.2d at 142; *Mauck*, 247 Md. at 444, 231 A.2d at 691 (citations and footnote omitted). Following the landowner's offer to dedicate their property for public use, acceptance may be evidenced in one of four ways: (1) "by deed or other record;" (2) "by acts in pais, such as opening, grading or keeping the road in repair at the public expense;" (3) by the general public's "long continued use[]" of the land; and (4) "by express statutory provision or other similar official action." *Lewis*, 261 Md. at 4–5, 273 A.2d at 142. Acceptance may be "either expressed[] or implied[]." *Cox v. Bd. of Comm'rs of Anne Arundel Cnty.*, 181 Md. 428, 432, 31 A.2d 179, 181 (1943). "[T]he recordation of a subdivision plat, containing an approval of the appropriate public officials, constitutes both a dedication and acceptance of the areas dedicated to public use without more." *Mayor & Council of Rockville v. Geeraert*, 261 Md. 709, 715, 276 A.2d 642, 645 (1971) (citation omitted).

### a.    Offer

We hold that the Brady Deed and Plat 1919, which was incorporated into the Brady Deed, reflect evidence of an offer. The Brady Deed is sufficient to establish Ms. Brady's intent because it expressly states that her property would be used "*for public convenience*," as well as "for a *public* highway and/or bridge[.]" (Emphasis added). The Brady Deed did not contain any limiting language and stated that the conveyance was "forever in fee simple, . . . free and clear of liens and encumbrances[.]" Additionally, the recordings of Plat 1919 on June 19, 1952, and again on March 26, 1986, generate a presumption that Ms. Brady "intend[ed] to dedicate" her property to "public use[.]" *Gunby*, 402 Md. at 330, 936

A.2d at 372; *Mauck*, 247 Md. at 443, 231 A.2d at 690 (citations omitted). Assuming, *arguendo*, that the Brady Deed's language or Plat 1919 were individually insufficient, the Brady Deed also references a "highway and/or bridge and their appurtenances," "as shown and/or indicated on the aforesaid plat," specifically Plat 1919, which depicts Bay Front Drive, a highway. Thus, we agree with the Appellate Court that both the Brady Deed and Plat 1919 establish Ms. Brady's unequivocal intent to offer the Property to public use. *Wilkinson*, 255 Md. App. at 250, 279 A.3d at 1075. This, however, does not end the inquiry, because this Court must evaluate the evidence of the State's acceptance.

> b.      *Acceptance*

We further hold that the State accepted Ms. Brady's offer to dedicate the Property to public use. We have held that "[g]enerally, acceptance is made by an express recorded document or by the appropriate entity assuming control and maintenance of the property offered." *Waterman*, 357 Md. at 504, 745 A.3d at 1010. Here, the State accepted the offer to dedicate set forth in the Brady Deed by accepting the conveyance and recording the instrument. *Lewis*, 261 Md. at 4, 273 A.2d at 142 ("[A]cceptance may ordinarily be evidence[] . . . by deed or other record[.]" (citations omitted)). We agree with the Appellate Court's conclusion that the dedication was complete when the State accepted the Property by the Brady Deed.[13] *Wilkinson*, 255 Md. App. at 254, 279 A.3d at 1077.

---

[13] The Aikens argue that the State's recording of Plat 1919 was dispositive that it had created a public road pursuant to its "public authority." The Aikens misinterpret the meaning of public authority. The "public authority" required to create a public road involves an exercise of eminent domain and condemnation proceedings, not the filing of plats. *See Mackenzie*, 74 Md. at 47, 21 A. at 693. The recording of a plat ordinarily

(continued . . .)

33

As previously noted, the County agrees with the Appellate Court's conclusion that it owns fee simple title to the Property by virtue of the 1988 Deed. The County, however, contends that the Appellate Court erred in concluding that the 1988 Deed conveyed the Property to the County as a public road because the court misinterpreted the 1988 Deed to accomplish something that was no longer feasible due to the storm damage and erosion, *i.e.*, the planned road. The County further argues that the 1988 Deed specifically stated that the land being conveyed was no longer needed by the State for its road project. The County, therefore, maintains that the Appellate Court erred in determining that the Property was, in fact, conveyed to the County as a public road. We disagree. As set forth below, the County's argument not only ignores the plain and unambiguous language of the 1988 Deed, but also fails to consider the statutory authority granted to the State to convey title to public roads, as well as the County's statutory authority to close public roads.

First, the 1988 Deed, entitled "Road Conveyance Deed," provided that the State owned the Property and maintained it for public use. The 1988 Deed characterizes the Property as State-owned when it mentions: (1) "certain *State* Highway(s) and/or Bridge(s) . . . designated as . . . Bay Front Drive[;]" (2) "Right of Way Plat(s) designated as *State*

---

(. . . continued)

generates a presumption that the landowner intended to offer and dedicate their property to public use. *Gunby*, 402 Md. at 330, 936 A.2d at 372. As the Appellate Court explained, "in the absence of a statute that provides otherwise, the filing of a plat merely constitutes an officer, and dedication is not complete until there is acceptance." *Wilkinson*, 255 Md. App. at 250, 279 A.3d at 1075. Here, there is no statute or local public law expressly providing that once the State, or another public entity, approves and records a plat depicting a road in St. Mary's County, dedication is complete, and a public road is thereby created. We agree with the Appellate Court that no statutory dedication occurred here.

34

*Highway Administration's* Plat(s) number . . . 1919[;]" and (3) "BEING ALL OF THE LAND which by deed recorded August 14, 1945 . . . was conveyed by Joan K. Brady *to the State of Maryland to the use of the State Roads Commission of Maryland*[.]" The 1988 Deed also reflects that the plats describing the Property show "the land, easements, rights[,] and controls of access which have been determined by the [State] as necessary *to be retained by the State* for the construction, operation, maintenance, use and protection of the highway(s) and/or bridge(s) constructed, or to be constructed[.]" (Emphasis added).

Under the 1988 Deed, the County remained "subject to" the completed dedication. The 1988 Deed specifically indicates that this conveyance was subject to "all rights and reservations that may have been granted or reserved by former owners of this property or their predecessors in title[.]" The 1988 Deed further notes that the County, upon accepting, would be subject "to each and every reservation, restriction, condition, covenant and control set forth in" the deed. We reject the County's contentions because the basis of Ms. Brady's offer and the State's acceptance was that the Property would be used for a public purpose, specifically as a highway or bridge. The 1988 Deed's "subject to" language unambiguously indicates that the parties had intended to incorporate that public purpose into the deed.

The General Assembly has given the State and county governments the authority to open, alter, and close public roads for over 200 years. *See e.g.*, *Barrickman v. Commissioners of Harford County*, 11 Gill & J. 50, 56 (1839) (explaining that the powers of the county commissioners to open and close public roads are regulated by statute, and the jurisdiction, as conferred, being special and limited, "must be administered in the

35

manner and according to the terms of the law creating it"). As noted by the Appellate

Court, the General Assembly has established a process for the State to dispose of land that

it acquired for public highway improvements where the project is abandoned. The 1988

Deed expressly states that "under . . . § 8-309 of the Transportation Article of the Annotated

Code of Maryland, it is necessary for the Board of Public Works of Maryland to join in the

conveyance of any land by the [State] of the Department of Transportation." Md. Code

Ann., Transportation ("Transp.") § 8-309(a)–(b) explains that:

> (a) The purpose of this section is to return unneeded land to the tax rolls of the counties and to make this land available *for use by a county or municipality for any transportation purpose*.

> (b)(1) [I]f land acquired under this subtitle is not needed for present or future State, county, or municipal transportation purpose or other public purposes, *the Administration shall dispose of the land as soon as practicable after the completion or abandonment of the project for which the land was acquired*.

>> (2)(i) If the land is from a project that was abandoned, and the Secretary determines that the property is no longer needed for any State transportation purpose, *a county or municipality may acquire the land for a transportation purpose*, with the approval of the Secretary[.]

>> *  *  *

>> (ii) If the land is not needed for a county or municipal transportation purpose, *the person from whom the land was acquired* or the successor in interest of that person *has the right to reacquire the land*[.]

(Emphasis added). Section 8-309 expressly contemplates that a transfer of property no

longer needed for a *State* transportation purpose may be transferred to a local government

for a *local* transportation purpose. The plain and unambiguous terms of the 1988 Deed, or

the "Road Conveyance Deed," reflect that the State conveyed Bay Front Drive to the

36

County for a public, transportation purpose pursuant to its authority under Transp. § 8-309. The State Board of Public Works was an additional grantor for the purpose of making the conveyance under the statute.

The 1988 Deed conveyed the *entirety* of the bed of Bay Front Drive, which the 1988 Deed expressly describes as a "county road." The 1988 Deed does not treat the unpaved portion of Bay Front Drive over the Property differently than the paved northern portion of the road; rather, Bay Front Drive is referred to as a whole. By the express terms of the 1988 Deed, the conveyance was fee simple title to a county road, and the conveyance was undertaken by the State pursuant to its statutory authority to convey land that was "no longer needed for any State transportation purpose[]" to "a county . . . for a transportation purpose[.]" Transp. § 8-309(b)(2)(i). By accepting the 1988 Deed, subject to "each and every reservation, restriction, condition, covenant and control set forth in [the] instrument[,]" the County accepted Bay Front Drive as a public road. It is notable that the Property was not offered or conveyed back to Ms. Brady or her "successor[s] in interest[,]" *Id.* § 8-309(b)(2)(ii), which further supports our conclusion that the State was transferring title to the Property to the County "for a transportation purpose," *Id.* § 8-309(b)(2)(i). This indicates that the Property remained a public road after the conveyance.

In reaching our conclusion that the 1988 Deed conveyed the entirety of Bay Front Drive as a road, we also observe that, in addition to providing a statutory process for the *State* to convey property no longer needed for a *state highway project*, the General

37

Assembly has also established a process for *the County* to close a *county road.*[14] Md. Code

Ann., Local Government ("Local Gov't") § 12-512 provides a procedure for opening,

altering, or closing a public road by petition, as well as pursuant to the governing body's

independent authority. Local Gov't § 12-512(a) states that "[a] resident of the county may

request, by petition, that the governing body of a county open, alter, or close a road." Local

Gov't § 12-512(d) specifically provides that:

> The governing body of a county may open, alter, or close any county road
> under this subtitle on its own initiative if:
>
> (1) at least 30 days' notice is given by publication once a week for 3
> successive weeks in a newspaper of general circulation in the county; and
>
> (2) a hearing is held to consider any objection or counter petition.

Consistent with the express authority granted by State law, Chapter 109 of the Code

of St. Mary's County provides that the "County Commissioners of St. Mary's County are

authorized and empowered to control and regulate the public roads and bridges in the

county." St. Mary's County Code § 109-1 (2017). As the Appellate Court observes,

Chapter 109 further provides that the County may, by petition, "[c]ondemn, lay out, open,

extend and make new public roads[]" or "[a]lter, straighten, widen, grade, improve, or *close*

*up, in whole or in part*, *any existing public road*[.]" *Id.* § 109-2(A) (2017) (emphasis

added).

---

[14] The statutory provisions that authorize a county to open, alter, or close a public
road "apply to all counties, except Baltimore City and Queen Anne's County." Local Gov't
§ 12-511.

In this instance, the County accepted the entirety of Bay Front Drive by the 1988 Deed that was executed by the State pursuant to its statutory authority to convey property no longer needed for a State transportation purpose, to a county government for "a transportation purpose." The County had the statutory authority to close the public road and did so when it adopted the 2017 Ordinance. We, therefore, disagree with the County that the 2017 Ordinance was "unnecessary and immaterial[]" because it "could not ratify something that never occurred[.]"

Wilkinson petitioned the County in December 2007 to close Bay Front Drive. On November 15, 2016, the County held a public hearing to assist in "deciding whether to approve [Wilkinson's] petition to . . . close [Bay Front Drive]." Local Gov't § 12-512(c)(2), (d)(2). By statutory right, the County closed Bay Front Drive "on its own initiative" upon adoption of the 2017 Ordinance in August 2017. *Id.* § 12-512(d). The 2017 Ordinance effectively served as public notice of the road closure. If there was no public road as the County and Wilkinson asserts, then the County would have no need to adopt the 2017 Ordinance closing the alleged road. We agree with the Appellate Court that the 2017 Ordinance "effectively confirms that there was an acceptance of the offer to dedicate before the Ordinance was issued." *Wilkinson*, 255 Md. App. at 257, 279 A.3d at 1079. We also agree that the adoption of the 2017 Ordinance was not a "mere formality" as determined by the circuit court.[15] Rather, the 2017 Ordinance embodied the legislative enactment required under State law and the County Code for the closure of a public road.

---

[15] We also construe the provisions of Transp. § 8-309 consistently with the

(continued . . .)

Accordingly, we hold that the circuit court erroneously granted the County's motion for summary judgment regarding the Aikens' Counts I, III, IV, and V. The circuit court similarly erred by granting Wilkinson's motion for summary judgment regarding the Aikens' Counts III and V.

## CONCLUSION

We agree with the Appellate Court's well-reasoned analysis and affirm its judgment in all respects. We hold that: (1) the County owns fee simple title to the Property; (2) the Brady Deed constituted a completed dedication of Bay Front Drive to the State; (3) under the plain and unambiguous language of the 1988 Deed and statutory procedure for transferring State-owned property to a county government for "a transportation purpose," the entirety of Bay Front Drive was transferred to the County as a "county road"; and (4) the County's adoption of the 2017 Ordinance constituted the legislative enactment required under State law and the County Code for the closure of a public road. Accordingly, we affirm the Appellate Court's judgment vacating and remanding on the Aikens' claims against both the County and Wilkinson. On remand, the circuit court should "take into consideration that the portion of Bay Front Drive over the [] [P]roperty" was closed pursuant to the 2017 Ordinance. *Wilkinson*, 255 Md. App. at 258, 279 A.3d at 1080.

---

(. . . continued)
provisions of Local Gov't § 12-512. If the Bay Front Drive project was indeed "abandoned" due to the storm damage, as the County asserts, then the County, in 1988 and upon conveyance of the 1988 Deed, could have conveyed back the Property to Ms. Brady or her successors, Transp. § 8-309(b)(2)(ii), or introduced an ordinance to close the road, Local Gov't § 12-512(a). The County, notably, did neither.

**JUDGMENT OF THE APPELLATE COURT IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**







# APPENDIX D: PLAT 1919

