CITY OF MONTPELIER *v.* JOHN McMAHON.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed December 8, 1911.

*Municipal Corporations—Street—Prescription — Dedication of Land for Street—Validity—Equity—Obstruction of Streets— Jurisdiction—Purprestures—Right of Municipality to Sue— Master—Jurisdiction—Objection not Made Below—When Effective on Appeal—Evidence.*

The fact that for 25 or 30 years some people, in going from one street in a city to another street, used a sort of path running between certain

houses and a row of trees standing along the side of one of the streets does not give the city the right to use for street purposes the land on which the path is located.

An unequivocal dedication of land for street purposes, and acceptance thereof by the municipality is irrevocable.

Defendant's land is located in the angle made by the intersection of Northfield and Berlin streets in the city of Montpelier. In 1889 defendant's grantor agreed with the street committee of the city council to relinquish to the city, for street purposes, a strip of land on the side of his property fronting Northfield street in exchange for the release to him by the city of an adjoining part of Berlin street, and thereupon the lines of the two streets were agreed on, and their intersection determined and marked by an iron pipe driven into the ground. A survey of the grantor's remaining property, made in the presence of himself and defendant just before the latter took his deed in 1900, recognized the agreed changes, and in 1902 the city built on Northfield street a sidewalk the edges of which next to defendant's property extended within two or three inches of the street line so surveyed. *Held*, that there was such an unequivocal dedication by defendant's grantor of the strip on Northfield street for street purposes, and acceptance by the city, as made the dedication irrevocable.

Under P. S. 1261, 1262, 1266, regulating the trial of issues before a special master, he has no jurisdiction to hear oral evidence respecting, and therefrom to find and report, proceedings in the case which are not shown by the files or the docket entries.

On an appeal in chancery, an objection may be of such a character that this Court will consider it, though made here for the first time, where the objection could not have been obviated if made below.

At common law a "purpresture," or, more properly, a "porpresture," exists when anything is unlawfully encroached upon, against the King, as in the royal demesnes, or in obstructing public ways, or in turning public waters from their right courses, or when any one has built an edifice in a city on the King's street.

Courts of equity have jurisdiction to prevent purprestures, and that jurisdiction is not supplanted, but rather supplemented, by our statutes prohibiting encroachments on highways.

The power of a court of equity to protect by injunction a public right from an encroachment in the nature of a purpresture cannot be defeated by denying the existence of the public right, for the court has jurisdiction to determine both whether the right exists, and whether there is an encroachment thereon.

In a suit in equity, by a city to restrain an alleged encroachment on land claimed to be a part of a street, an allegation in defendant's answer denying "the title of the orator to the land in question" is sufficient to raise the question of whether a municipality has such an interest in the highways within its territorial limits as enables it to sue for an injunction to restrain an encroachment thereon.

Though a municipality does not own the highways within its territorial limits, it is charged by the state government with the duty of maintaining them for public use, and so is a proper complainant in equity in respect of an obstruction thereto.

In a suit in equity by a city to restrain an alleged encroachment on land claimed to have been dedicated to the city for street purposes, evidence of a verbal agreement between the city and defendant's grantor with reference to the surrender of the land in question to the city is admissible as bearing on the question of dedication.

APPEAL IN CHANCERY.   Heard on the pleadings, master's report, and defendant's exceptions thereto, at the March Term, 1911, Washington County, *Miles*, Chancellor.   Exceptions overruled, *pro forma*, and decree for the orator in accordance with the prayer of the bill.   The defendant appealed.   The opinion states the case.

*Frederick P. Carleton* and *Fred B. Thomas* for the orator.

*Harry C. Shurtleff* for the defendant.

HASELTON, J.   This is a bill in chancery.   The defendant is the owner of land abutting on Northfield street, so called, in the city of Montpelier.   The bill alleges, among other things, that the defendant is threatening to build a piazza on a part of the street used for a sidewalk, and that he thereby threatens great injury to the inhabitants of Montpelier and of the State at large and that no adequate remedy at law can be had.   The bill prays that the defendant be enjoined from so occupying the sidewalk.   In his answer the defendant admits his intention to build a piazza on a part of the land used as a sidewalk; but he claims ownership of the land on which he intends to build, and asserts his right to build thereon.   The case was referred to a special master, and upon his report a decree was rendered in accordance with the prayer of the bill.   The defendant appealed.

The property of the defendant on Northfield street consists of lots and houses extending along that street from its intersection with Berlin street; and the question of the location of Northfield street along past the defendant's real estate

is the issue, or one of the issues, in this case. In the summer of 1909, the defendant began to build a piazza on the street side of one of the houses mentioned and on land which the city claimed was a portion of Northfield street. The bringing of this bill and the issuance of a temporary injunction followed.

The orator claims that the land in question is a part of the street by dedication, by virtue of a re-survey of the street, and by prescription. The claim of prescription, or adverse use, is based upon the finding that for many years, twenty-five or thirty, some people in going along Northfield street to and from Berlin street used a sort of a path which ran somewhere between the houses above referred to and a row of trees standing along the side of the street. It is so clear that the doctrine of adverse possession or use, cannot here be succesfully invoked that we do not deem it necessary to discuss the law in that regard nor to go into the details of the evidence relied on under the claim of adverse use.

We consider now the question of dedication. In 1889, one Johonnott was the owner of the property in question and in that year the street committee of the city council met Mr. Johonnott on the premises and an agreement was entered into between them that the city would relinquish to Mr. Johonnott a part of Berlin street and that Mr. Johonnott would relinquish to the city, for street purposes as we must understand, a strip of land on the Northfield street side of his property, and the lines on the Berlin street side and the Northfield street side were then agreed upon, and the corner of the two streets was then fixed, and the next day it was marked by an iron pipe driven into the ground. The strip of land relinquished by Mr. Johonnott extended the whole length of the defendant's property on Northfield street. The next year, May 19, 1900, the defendant purchased of Johonnott, taking a warranty deed. Prior to giving the deed the grantor employed one Smith, a civil engineer, whose competency was conceded by the defendant, to survey the land. When the survey was made both Mr. Johonnott and the defendant were present. At the suggestion of Johonnott the surveyer took as his starting point the corner agreed upon between him and the city council during the summer before; from thence there was made around the lot a survey

which was followed in the description of the deed afterwards given by Johonnott to the defendant. When the deed was given, the grantor told the defendant about the exchange of land agreed upon, as hereinbefore stated, and the defendant then knew how much land was to be given up by the city on the Berlin street side, but it does not appear that he then had information as to where the agreed line on the Northfield street side was further than that the agreed corner was pointed out to him, that he had been present when the survey was made, and that he had the information contained in his deed. As to this survey the master finds that on account of local magnetic attraction the needle of the compass could not be accurately relied upon.

In the following year, 1901, the city council caused to be made what is called a re-survey of Northfield street, and in making such survey it employed the same civil engineer who had surveyed for the defendant's grantor in the year previous. Of this survey the master finds that it was made "in accordance with the agreement made with Mr. Johonnott in 1899," at the time of the exchange of land, and it appears from the report that this survey corresponds substantially with the former.

In 1902, the city built along Northfield street adjacent to the defendant's property a plank sidewalk the edge of which, next to the defendant's property, extended to within two or three inches of the street line of the survey last mentioned, which, as the master finds, follows the agreement made between the city and the defendant's grantor at the time of the exchange between them. This sidewalk has remained in the same place from the time of its building until the present, and is the one which the defendant has been enjoined from building a piazza over.

So far as the agreement of exchange was for the benefit of Johonnott or his grantee, the defendant, it was also acted upon, for the designated land on Berlin street side was made a part of the lawn of a house on the defendant's property and it was, and is, inclosed as a part of the lawn.

The facts recited show an unequivocal dedication of the land in question on Northfield street for a highway and a like acceptance by the city authorities, and such dedication is ir-

revocable.  *Folsom* v. *Underhill,* 36 Vt. 580; *Fairfield* v. *Morey,* 44 Vt. 239.

The latter case was that of an exchange, between a town and a land owner, quite similar to the exchange here in question, and that case is full authority for the conclusion above reached, and is obviously sound.

In view of the result already reached it is unnecessary to consider whether or not there was any validity in the proceedings taken for a re-survey and re-location of Northfield street.

The defendant's counsel complains of certain proceedings in the cause taken by the court of chancery, or by the chancellor, in no way appearing by the files or docket entries in the cause. With regard to these, counsel testified before the master, subject to the orator's objection, and the proceedings complained of are set out in the master's report.  But such matters cannot be so brought before us, for to try, determine, and report upon them is beyond the province of a special master.  P. S. 1261, 1262, 1266.

The gist of the defendant's complaint in this regard is that he was denied an opportunity to have it determined by a jury in an action at law whether or not the strip of land in question is a part of the highway.  In this Court the defendant insists that it was his right to have that matter so determined and that it is a matter not properly cognizable in a court of equity, and what he says amounts to a demurrer *ore tenus.*  In chancery cases an objection may be of such a character that this Court will consider it although it is made here for the first time, as where the objection could not have been obviated if it had been made below.  *Enright* v. *Amsden,* 70 Vt. 183, 187, 40 Atl. 37; *Weed* v. *Hunt,* 76 Vt. 212, 215, 56 Atl. 980.

Here in view of the nature of the question raised and of the fact that the defendant has been permitted to argue it, we take it under consideration without reference to the proceedings below.

The bill in this case charges the defendant with something in the nature of a purpresture, which exists where there is a wrongful appropriation or occupation by one of a highway, or common, or harbor.

In the work upon the Laws and Customs of England of which Glanville was without much doubt the author it is said: "A purpresture or more properly speaking, a porpresture, is when anything is unjustly encroached upon, against the King, as in the royal demesnes, or in obstructing public ways, or in turning public waters from their right course, or when any one has built an edifice in the city upon the King's street."

In the definition of a "purpresture" Glanville is substantially followed by both Coke and Blackstone, and neither of them is more clear, or more exact, than is the author of our earliest treatise upon the Common Law. Glanville, Book 9, Chap. 11; (Beames' translation); Co. Litt. 277b; 4 Bl. Comm. *167.

Now courts of equity have from very early times taken cognizance of purprestures. *Attorney General* v. *Richards*, 2 Ansth. 603, and authorities there cited. Eden on Injunctions, 158, 159, Ed. 1822.

Our statutory provisions aimed at the prevention of encroachments upon highways do not supplant this equitable jurisdiction but supplement it rather. *Bristol* v. *Palmer*, 83 Vt. 54, 65, 74 Atl. 332, 31 L. R. A. (N. S.) 881.

Moreover the power of a court of equity in its usual course of procedure to protect a public right from an encroachment in the nature of a purpresture cannot be defeated by the denial of such public right. For a court of equity may determine both whether the right exists and whether there is an encroachment or an attempted encroachment upon it.

In his answer the defendant makes denial of "the title of the orator to the land in question;" and this denial may fairly enough be taken to raise the question of whether a municipality has such an interest in the highways within its territorial limits as to make it a proper complainant in such a case as this. A municipality does not own the highways within its limits, for highways are public ways; but a municipality is charged by the state government with the duty of maintaining for the public use highways so located. *Slicer* v. *Hyde Park*, 55 Vt. 481.

And the duties and liabilities imposed upon a town or other municipality in respect to highways are such as to make it a proper complainant in equity in respect to obstructions to the highways committed to its charge. *Town of Burlington* v. *Schwarzman,*

52 Conn. 181, 52 Am. Rep. 571. This matter was alluded to in *Bristol* v. *Palmer*, 83 Vt. 54, 64, though there was then no decision upon it, for no question respecting it was there raised. *Town of Burlington* v. *Schwarzman*, 52 Conn. 181, 52 Am. Rep. 571; *Appeal of Township of North Manhiem*, 14 Atl. 137, (Penn.) *Watertown* v. *Cowen*, 4 Paige, 510, 27 Am. Dec. 80; *County of Stearns* v. *St. Cloud &c. R. Co.*, 36 Minn. 425, 32 N. W. 91; *Springfield* v. *Connecticut &c. R. Co.*, 4 Cush. 63; *Council Grove Township* v. *Bowman*, 76 Kan. 563, 92 Pac. 550; *Sierra County* v. *Butler*, 136 Cal. 547, 69 Pac. 418.

The defendant filed exceptions to the report, under which he claims that it was error for the master to receive evidence of the verbal agreement between the orator and the defendant's grantor. But on the question of dedication, and in connection with the other evidence bearing thereon, such evidence was clearly admissible.

*Decree affirmed and cause remanded.*