Filed 05/05/25

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 23-CV-00499

John Gerlach et al v. Town of Chittenden

## DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This case involves a dispute as to whether there is a right-of-way, open for use by the public as a hiking trail, running across private lands in Chittenden that are owned by Plaintiffs John and Debra Gerlach. Defendant-Counterclaimant, the Town of Chittenden, seeks summary judgment on its claim for a declaration that there is such a trail. Plaintiffs seek summary judgment on their claims seeking declarations by this Court that: (1) a former public road traveling on roughly the same path as the disputed trail was properly discontinued in the 1800s; and (2) no subsequent actions have established a public road or trail over Plaintiffs' lands.

Plaintiffs are represented by William H. Meub, Esq. and Andrew J. Snow, Esq. The Town is represented by James F. Carroll, Esq., and Kevin L. Kite, Esq. For reasons that follow, the Town's motion is GRANTED, and Plaintiffs' motion is DENIED.

### Standard of Review

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The moving party bears the initial burden of identifying the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. V.R.C.P. 56(c)(1). However, the showing necessary to satisfy this initial burden varies, depending on whether the movant would bear the burden of persuasion as to the particular issue at trial. *See* 10A A. Steinman & M. Kane, *Fed. Prac. & Proc. Civ.* § 2727.1 (4th ed., Apr. 2025 update).[1] If the movant bears that burden—such as where a plaintiff seeks summary judgment on one of its own claims for relief—the movant's burden at the summary judgment stage is a heavy one:

> it must lay out the elements of its claim, citing facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nomovant prevailing.

---

[1] "'Federal cases interpreting the Federal Rules are an authoritative source for the interpretation of identical provisions of the Vermont Rules.'" *Margison v. Spriggs*, 146 Vt. 116, 118 n.* (1985) (quoting Reporter's Notes, V.R.C.P. 1)).

*Id.* Thus, even in instances where the basic facts are undisputed by the parties, summary judgment in favor of the party with the burden of proof is inappropriate if "reasonable minds might differ on the inferences arising from undisputed facts." *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. Unit B 1982); *see also Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) (summary judgment unavailable if undisputed record is "susceptible" to differing inferences); *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) ("When the moving party has the burden of proof at trial, that party . . . must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." (emphasis, quotation marks, and citation omitted)).

"Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or defendant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* And in evaluating the evidence presented, all of which must be "admissible" to be considered, V.R.C.P. 56(c), "[t]he nonmoving party receives the benefit of all reasonable doubts and inferences." *Gates v. Mack Molding Co., Inc.*, 2022 VT 24, ¶ 13, 216 Vt. 379. "If the movant [with the burden of proof at trial] fails to make th[e] initial showing, the court must deny the motion, even if the opposing party has not produced any contradictory evidence in response." *Fed. Prac. & Proc. Civ.* § 2721.1; *see Margison*, 146 Vt. at 118-19. If, on the other hand, the moving party "makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (cleaned up).

Undisputed Material Facts

Plaintiffs own real estate, consisting of nearly 600 acres and some improvements thereon, located off Mountain Spring Road in Chittenden (hereinafter "the Property"). (Pls.' Opp'n to Town's Statement of Undisputed Material Facts ("Pls.' Opp'n to SUMF"), ¶ 1.) Plaintiffs acquired the Property in January of 2018 through a warranty deed from Stanley P. Fishkin and Nancy S. Marshall (hereinafter "Fishkin/Marshall"). (*Id.* ¶ 3.) There is a disputed public right-of-way that runs east-west across the Property, and which the Town today formally refers to "Legal Trail No. 10," and which the Town formerly called "Town Highway No. 11." (*Id.* ¶¶ 5, 7; Def.'s Exs. K & L.) In their filings in this and other legal proceedings, the parties refer to this same disputed right-of-way as the "1796 Road" or the "Green Road," and the name "Green Road" was also used to identify this road on old maps and in old records. (Pls.' Opp'n to SUMF, ¶ 5.) To avoid confusion in this ruling, the Court generally refers to this as the "disputed trail."

In the early 2000s, when Fishkin/Marshall owned the Property, the Town began to assert that the disputed trail was a public road that had been established through two surveys, each made in 1796. (*Id.* ¶ 12.) In response, Fishkin/Marshall, together with another nearby owner, Jean Arendt, filed an action in this Court against the Town and its officials, alleging that the 1796 surveys did not establish a road in the manner required by then-existing statutes pertaining to the establishment of public roads. (*Id.* ¶ 13.) The suit, which was filed in June of 2004, further alleged that, even if properly established, the road was properly discontinued in 1846 by an order of what was then known as the "Rutland County Court." (*Id.*) In sum, Fishkin/Marshall sought a declaration that there was no existing public

road, or any other right-of-way or interest held by the Town, allowing public travel over and across the Property. (*Id.*)

In July of 2006, Fishkin/Marshall, together with the defendants in that case, executed and filed a Settlement Stipulation with the Court. (*Id.* ¶¶ 16-17.) The first paragraph of the Settlement, entitled "Background," references the Town's claim that the "1796 Road" is an existing public road/highway that crosses the Property, and also references the Town's claim that another road—the portion of Mountain Spring Road as it extends northerly into the Property—is also a public road. (Def.'s Ex. F, ¶ 1.) The next paragraph of the Settlement Stipulation obligates the Town initiate and complete, as soon as reasonably possible, "the process, pursuant to 19 V.S.A. Chapter, to terminate or discontinue" any rights held by the Town with regard to Mountain Spring Road . (*Id.* ¶ 2.) The Stipulation then addresses the disputed trail (so-called "1796 Road"), as follows:

> **Location/alteration and reclassification of 1796 Road:** Upon discontinuance of the Mountain Spring Road as provided above, Chittenden shall, within 30 days of that event, initiate the process, pursuant to 19 V.S.A. Chapter 7, of altering and reclassifying the 1796 Road to a trail pursuant to 19 V.S.A. §301 (8)(A). That section of reclassified trail which crosses the Fishkin/Marshall property . . . shall be used for hiking and other non-motorized recreational purposes. The exact location of the centerline of the 1796 Road which was described as a four rod wide road shall be as set forth in the attached **Exhibit[] . . . B** as the same abuts or passes through the Arendt and Fishkin/Marshall properties. . . . The Town of Chittenden shall take all reasonable steps within its power to complete the alteration and reclassification process and adopt any necessary ordinances in order to restrict the use of this trail as provided for in this Agreement as soon as reasonably possible. Upon final alteration and reclassification of the 1796 Road, the location of the trail shall be shown on future official town highway maps. The actual used portion of the trail may be located anywhere within the four rod right of way. The Defendants shall not endeavor to change the status of those sections of the 1796 Road within the Fishkin/Marshall property . . . as a trail for non-motorized recreational uses for as long as Stanley Fishkin and/or Nancy Marshall own the Fishkin/Marshall property . . . . No structures other than bridges or culverts shall be permitted within the right of way, but Chittenden may take such steps as are reasonably necessary to maintain the used portion of the trail within the right of way. The Town or its designee may place appropriate signage. The Plaintiffs shall not object to this action and to the designation of the 1796 Road as a trail or any ordinance intended to restrict the use of the trail as provided for in this Agreement, nor shall any of the parties to this Agreement seek compensation in any reclassification or alteration proceedings to implement this Agreement. The trail will be located as it passes the "meadow at Thomas hill" where the centerline is located so as not to disturb the meadow.

(Def.'s Ex. F, ¶ 3.)

Exhibit B to the Settlement Stipulation was a map prepared during the summer of 2006 by Deborah Daniels Mithoefer, a licensed professional surveyor retained by the Town. (Pls.' Opp'n to SUMF, ¶¶ 21, 48; Def.'s Ex. K, ¶¶ 7-8.) The map depicts the disputed trail's location as it crosses the Property, and also specifically identifies where colored flags had been placed to mark portions of the trail's newly-altered location, and contains the following statements:

The centerline of the trail shall run by and along the logging road as it passes through land of Fishkin as depicted hereon. The trail shall then continue easterly following the blue and orange flags south of the meadow on Thomas Hill and then following by and along the pink flagging to the lands of the USFS.

(Pls.' Opp'n to SUMF, ¶ 21; Ex. B to Def.'s Ex. F.)

The Settlement Stipulation also included provisions under which the parties agreed that the Town would relinquish certain rights and/or take certain actions. For example, the Town relinquished any right it may have had, under recently-enacted legislation, to reclassify any "unidentified corridor" on the Property to a public road. (Def.'s Ex. F., ¶ 6.) The settling parties also agreed that, for purposes of local property taxes, the Town would reduce, by $50,000 per tax year, the assessed value of the Property for the 2004, 2005, and 2006 tax years. (*Id.* ¶ 8.) In return, Fishkin/Marshall agreed to dismiss with prejudice a separate lawsuit—the so called "Tax Appeal Case," Superior Court Docket No. 582-9-04 Rdcv—that they had brought against the Town in 2004, on the heels of their Declaratory Judgment Act suit. (*Id.*)

On September 22, 2006, the Settlement Stipulation was signed and filed in the Court's docket as an order of the Court. (Pls.' Opp'n to SUMF, ¶ 17; Def.'s Ex. F, at 10.) Shortly thereafter, consistent with paragraph 2 of the Settlement Stipulation, the Town completed proceedings to discontinue Mountain Spring Road. (Pls.' Opp'n to SUMF, ¶¶ 33-34.) On April 1, 2008, Ms. Mithoefer, at the request of the Town, completed a formal survey of the centerline of the disputed trail as it crossed the Property, in accordance with Exhibit B of the Settlement. (*Id.* ¶¶ 35-36.) That survey was prepared for use during proceedings later that year to alter the location, and reclassify "Town Highway No. 11" to a legal trail, as it crossed the Property. (*Id.* ¶ 50.) In September of 2008, the selectboards of the Towns of Chittenden, Pittsford, and Pittfield jointly initiated those proceedings. (*Id.* ¶ 37.) A public hearing was held as part of those proceedings, which was attended by Fishkin/Marshall's attorney. (*Id.* ¶¶ 38-39.) The selectboards thereafter issued a joint Report, which found that "public good, necessity and convenience of the inhabitants of the Town of Chittenden require[d]" the proposed alteration and reclassification of Town Highway No. 11 as it crossed the Property of Fishkin/Marshall. (*Id.* ¶ 40.) A copy of the April 2008 Mithoefer survey was attached to the joint Report, and the Report itself referenced the survey as evidence of the location of the public road that, according to the Report, had been altered and reclassified from a Class 4 road into a public trail. (Def.'s Ex. I.) Later that year, the joint Report was recorded in the land records of the Towns of Chittenden, Pittsford, and Pittsfield. (Pls.' Opp'n to SUMF, ¶ 42.)

From 2006 through 2009, the disputed trail had been depicted on annual State Highway Maps for the Town of Chittenden as "Town Highway No. 11." (Pls.' Opp'n to SUMF, ¶ 44.) After the Settlement Stipulation, the Town of Chittenden, along with the State Agency of Transportation ("AOT"), worked to amend the State Highway Maps for Chittenden, in order to identify and show "Legal Trail No. 10" on the Maps, where Town Highway No. 11 had been. (Pls.' Opp'n to SUMF, ¶ 46.) Thus, beginning in 2010, and for all subsequent Highway Maps published by the State AOT, the former "Town Highway No. 11" was redesignated and shown as "Legal Trail No. 10." (*Id.* ¶ 45; Def.'s Ex. L.)

The Plaintiffs have failed to show a genuine dispute as to any material fact. "'An issue of fact is material only if it could affect the outcome of the case.'" *Civetti v. Turner*, 2022 VT 64, ¶ 19, 217

Vt. 411 (quoting *Gates*, 2022 VT 24, ¶ 14).  Plaintiff's argument regarding the work of Ms. Mithoefer is misplaced.  Ms. Mithoefer submitted a sworn affidavit that describes work that she performed personally during 2006-08, including the drafting of Exhibit B and her subsequent survey.  (*See* Def.'s Ex. K, ¶¶ 3-16.)  She alleged that her work included entering the Property and performing the work of a professional surveyor, on the ground.  Plaintiffs dispute that "any marking or work . . . [was] done on the ground at the Property in 2006 or any time prior to the Gerlachs' purchase of the Property."  (Pls.' Opp'n to SUMF, ¶ 49.)  Putting aside whether a rational fact finder could agree with Plaintiffs on that issue, Plaintiffs have not shown that the issue is material.

Whether Ms. Mithoefer actually went to the Property in the summer of 2006 and conducted survey work are not facts that are material to the question whether Fishkin/Marshall unequivocally intended to dedicate the disputed trail to public use, which is determinative as explained below.  Fishkin/Marshall gave their assent to Exhibit B—however it was prepared—as well as to the remainder of the Settlement Stipulation.  Likewise, even if Ms. Mithoefer's April 2008 survey was wholly contrived by her, or grossly negligent or inaccurate, the survey was still presented at a public hearing, not objected to by Fishkin/Marshall, and then recorded in the land records as an exhibit to a joint Report that found "Legal Trail No. 10" to be necessary and in the public interest.  Indeed, but for their contention that a reclassification of a public highway to a trail is a legal impossibility unless there is an existing highway to reclassify, Plaintiffs readily concede that the procedures actually undertaken by the three Towns met all the statutory requirements for a highway reclassification (and alteration).  That valid process necessarily includes the making and recording of a survey.

Similarly, whether Ms. Mithoefer took steps from 2014 and onward to install permanent monuments and markings of the location of Legal Trail No. 10, is not material to the issues of dedication and acceptance.  As explained below, the dedication and acceptance was completed no later than the Town's completion of the statutory reclassification/alteration proceedings in November of 2008.  And Plaintiffs make no argument that the disputed trial was ever discontinued at some point after 2008.  As such, whether Ms. Mithoefer performed additional work on the Property, between 2014 and 2022, is not material to the disposition of the Town's motion.

Analysis

Plaintiffs seeks a judgment declaring that the disputed trail was properly discontinued by court order in 1846 or "pursuant to the presumption of discontinuance contained in 19 V.S.A. § 717."  (Pls.' Mot. for Summ. J. at 1, 8.)  It also seeks an order declaring that the Town now has no public rights or interests to the disputed trail.  (*Id.* at 1, 9.)  The Town seeks a judgment declaring that the disputed trail is open to the general public as of right, for hiking and other non-motorized recreational purposes, and which the Town has a right to maintain and control.  (Def.'s Mot. for Summ. J. at 19.)  The Court starts with the Town's motion.

I.  The Town's Motion for Summary Judgment

The Town advances two, alternative theories in arguing for summary judgment.  First, it asserts that, pursuant to the Settlement Stipulation, it acquired a public use trail from Fishkin/Marshall as a matter of contract, which is binding on and enforceable against Plaintiffs.  (Def.'s Mot. for Summ

J. at 2-15.)  Second, the Town claims that under the common-law doctrine of dedication and acceptance, Fishkin/Marshall dedicated the disputed trail to the public, and the Town accepted that dedication, thus establishing the trail as a matter of law before Plaintiffs entered the picture.  (*Id.* at 15-19.)

Plaintiffs argue public roads cannot be established through a contract with a landowner, and the Settlement Stipulation was not made binding on or enforceable against them.  (Pls.' Opp'n to Town's Mot. for Summ. J. at 3-10.)  Plaintiffs also argue the Settlement Stipulation reveals no intent by Plaintiffs' predecessors in title to dedicate the disputed trail to public use.  (*Id.* at 16-17.)  Because the court grants the Town's motion based on dedication and acceptance, the court does not address the Town's contract argument.

A.  Dedication and Acceptance

The common law process of "transferring ownership of a road from private hands to town requires dedication by the owner and acceptance by the town."  *Island Indus., LLC v. Town of Grand Isle*, 2021 VT 49, ¶ 28, 215 Vt. 162.  "'Dedication is the setting apart of land for public use,' which may arise 'either expressly or by implication of law.'"  *Id.* (quoting, with prior quotation marks omitted, *Town of S. Hero v. Wood*, 2006 VT 28, ¶ 10, 179 Vt. 417)).  The issue of the owner's intent to dedicate private lands to public use "is a question of fact,'" *Wood*, 2006 VT 28, ¶ 10 (quoting *Smith v. Town of Derby*, 170 Vt. 553, 554 (1999) (mem.)), on which the proponent of dedication bears the burden of proof at trial, *see Kirkland v. Kolodziej*, 2005 VT 90, ¶¶ 1-2, 199 Vt. 606; *County of Bennington v. Town of Manchester*, 87 Vt. 555, 559 (1914); 22B *Am. Jur. 2d Dedication* § 70.  An owner's intent to dedicate may be demonstrated by the "owner's writings, affirmative acts, acquiescence in public use, or some combination thereof, so long as the owner's intent to dedicate clearly appears."  *Kirkland*, 2005 VT 90, ¶ 35.

While the owner's intent to dedicate "must be shown beyond conjecture," *Gore v. Blanchard*, 96 Vt. 234, 239 (1922), dedications based on an owner's writings or declarations require no "particular words or forms of conveyance," 22B *Am. Jur. 2d Dedication* § 23 (citing *Kadlec v. Dorsey*, 233 P.3d 1130, 1131 (Ariz. 2010) (en banc)), nor any "particular . . . ceremony," *Bd. of Cnty. Comm'rs of St. Mary's Cnty. v. Aiken*, 296 A.3d 933, 954 (Md. 2023).  *See, e.g.*, *Island Indus., LLC*, 2021 VT 49, ¶ 29 (finding express dedication based on various writings by landowner submitted piecemeal to town); *City of Montpelier v. McMahon*, 85 Vt. 275, 278-80 (1911) ("unequivocal" dedication and acceptance found where town built new street in alignment with its survey, which was "made in accordance with" prior agreement by town to relinquish a part of another public road back to landowner, in return for that owner's relinquishment of other land for new street (citing *Town of Fairfield v. Morey*, 44 Vt. 239 (1872)); *Winooski Lumber & Water Power Co. v. Town of Colchester*, 57 Vt. 538, 542 (1885) (former landowner's recorded survey of roads crossing his land was a "proffer[]" to dedicate that was "open for acceptance"), *overruled on other grounds*, *Demers v. City of Montpelier*, 120 Vt. 380 (1958); *Aiken*, 296 A.3d at 955 ("Absent language showing contrary intent, the intent to dedicate may be presumed when a landowner makes a plat of their property depicting streets or public roads and subsequently conveys that property." (quotation marks omitted)).

An imperfect or defective statutory dedication "can be considered as a valid common law dedication."  22B *Am. Jur. 2d Dedication* § 36 (citing, *inter alia*, *Great N. Props., LLLP v. Extraction Oil & Gas, Inc.*, 522 P.3d 228, 238 (Colo. App. 2022) ("Dedication can occur by common law or by statute, and 'if defective under either method, it may be operative under the other.'" (quoting *Fortner*

*v. Eldorado Springs Resort Co.*, 230 P. 386, 388 (Colo. 1924)), *rev'd on other grounds,* 547 P.3d 1110 (Colo. 2024)); *see* 11A *McQuillen The Law of Municipal Corporations* § 33.5 (3d ed., July 2024 update) ("a statutory dedication which is imperfectly made is often considered to be a valid common-law dedication"). That is because a dedication a form of equitable estoppel. *See Wood*, 2006 VT 28, ¶ 11; *County of Bennington*, 87 Vt. at 557. Equitable estoppel arises where the party who would be estopped has given the party claiming estoppel a "right to rely on" the former's representations, "as indicative of [the former'] intent." *Gore*, 96 Vt. at 239 (1922); *see* 22B *Am. Jur. 2d Dedication* § 19 ("The acts of the owner must either be such as to show an intent to dedicate, or such as to estop him from denying that such was his intent. . . . [T]he question is not one of necessity, but one of reliance by the public on appearances created by the landowner.").

An estoppel to deny a dedication of private lands to public use is complete when there is substantial, good faith reliance on the owner's clear offer of dedication, such that it would be unjust to thereafter allow the private owner to enforce a right of private ownership. *See Morey*, 44 Vt. at 244 ("[I]f accepted and used by the public in the manner intended, the dedication is complete, precluding the owner, and *all claiming in his right*, from asserting any ownership inconsistent with such use." (quotation marks omitted; emphasis in original)). Consistent with such principles, a "[l]apse of time is not required to ripen a dedication; it becomes binding and irrevocable when the offer and acceptance are complete." *County of Bennington*, 87 Vt. at 557; *see Kirkland*, 2005 VT 90, ¶ 35 ("No lapse of time . . . is required if the acts of dedication and acceptance are unequivocal"); *Morey*, 44 Vt. at 244 (same); *see also Fisher v. Poole*, 142 Vt. 162, 168-69 (1982) (real estate seller estopped to assert that disputed right of way was retained by him pursuant to his deed, since just "prior to" execution and delivery of deed, the elements of equitable estoppel were established).

Acceptance, in addition to a dedication, is required to create a public right-of-way. The proponent of an acceptance must prove that appropriate town authorities clearly intended to "assume[] the responsibility of maintenance and repair of the highway or otherwise . . . exercise[] control over the highway." *Kirkland*, 2005 VT 90, ¶ 38. As with the owner's intent to dedicate, the issue of the town's intent to accept a road as public "is a question of fact." *Okemo Mtn., Inc. v. Town of Ludlow Zoning Bd. of Adjustment*, 164 Vt. 447, 455 (1995). Acceptance of a road by a town may established from written or oral expressions made by appropriate town officials, or proven by implication, so long as the evidence clearly reveals an intent on the part of the town to accept the road as a public road. *See Island Indus.*, 2021 VT 49, ¶¶ 28, 34; *Gardner v. Town of Ludlow*, 135 Vt. 87, 90 (1977); *Druke v. Town of Newfane*, 137 Vt. 571, 576 (1979); *McMahon*, 85 Vt. at 278-80.

As to an acceptance by implication, the proponent of the acceptance must prove an "unequivocal intent to accept 'coupled with some affirmative act of acceptance on behalf of the town.'" *Id.* ¶ 28 (quoting *Kirkland*, 2005 VT 90, ¶ 35). "Road repairs and maintenance by the town is evidence from which acceptance may be inferred." *Druke*, 137 Vt. at 576. However, working the road or highway, or acknowledging an obligation to maintain a road or highway, are not the exclusive means by which the town's intent to accept may be shown. For example, an effort by the town's selectboard to "lay out" a public highway pursuant to statutory procedures, following the owner's dedication, is also a basis on which to find acceptance. *See Winooski Lumber*, 57 Vt. at 542 ("Instead of accepting the dedication as commonly done by working and using the streets, the selectmen proceeded, as we think, to 'lay out' the streets or highways under the statutes in that behalf, but standing upon the dedication as proffered in 1838, as still open for acceptance . . . ."). Additionally, the listing of the purported road on a State Highway Map has also been found to support an inference

of an intention by town officials to accept a road as a public road.  *See Gardner*, 135 Vt. at 90; *Smith v. Town of Derby*, 170 Vt. 553, 555 (1999) (mem.).


B.  Dedication by Fishkin/Marshall

The Town's evidence pertaining to the representations made by Fishkin/Marshall to the Town, viewed in the light most favorable to Plaintiffs, all point to one conclusion:  Fishkin/Marshall clearly and unequivocally intended to dedicate the disputed trail to public use as a hiking trail, or the Town at least had the right to believe that Fishkin/Marshall had so intended.

The 2006 Settlement Agreement was entered into after roughly two years of litigation, during which the parties' respective battle lines were clearly drawn.  On one side, the Town had been claiming that a supposed corridor or old road running across and through undeveloped private lands was full-blown public road.  (*See* Def.'s Ex. F, ¶ 1 ("Background")).  On the other side, the affected landowners, Fishkin/Marshall, claimed unrestricted ownership in fee and the right to exclude others.  Paragraph 3 of the Stipulation spelled out terms by which the parties agreed to settle that central dispute, by answering several key questions—including the what, when, where, how—as follows:

> What extent of easement, if any?:  "Th[e] section of reclassified trail"—*i.e.*, the "1796 Road," when later altered and reclassified "to a trail" as it crosses the Property—"*shall* be *used* for hiking and other non-motorized recreational purposes."  (Def.'s Ex. F, ¶ 3 (emphasis added).)

> How achieved?:  "[T]he process, pursuant to 19 V.S.A. Chapter 7, of altering and reclassifying the 1796 Road to a trail pursuant to 19 V.S.A. § 301(8)(A)."  (*Id.*)

> When?:  "Upon discontinuance of Mountain Spring Road . . . Chittenden shall . . . initiate . . . within 30 days" the above process and "take all reasonable steps within its power to complete the . . . process and adopt any necessary ordinances in order to restrict the *use* of this trail as provided for in this Agreement as soon as reasonably possible."  (*Id.* (emphasis added).)

> Where located?:  "The exact location of the centerline of the 1796 Road which was described as a four rod wide road shall be as set forth in the attached **Exhibit[] . . . B** as the same abuts or passes through the . . . Fishkin/Marshall properties."  (*Id.*)  "The actual *used* portion of the trail may be located anywhere within the four rod right of way."  (*Id.* (emphasis added).)

> How constructed/maintained?:  "No structures other than bridges or culverts shall be permitted within the right of way, but Chittenden may take such steps as are reasonably necessary to maintain the *used* portion of the trail within the right of way.  The Town or its designee may place appropriate signage."  (*Id.* (emphasis added).)

These provisions are clear representations of an intention to dedicate the disputed trail to public use. The repeated references to "use" and "actual use" of the agreed upon right-of-way as a hiking and recreational trail is indicative of an intent to allow actual use, and thus, an intent to give up the fundamental right to exclude others. *See Echeverria v. Town of Tunbridge*, 2024 VT 47, ¶ 19, 325 A.3d 98    Further, the parties' stipulation to the map attached as Exhibit B, which depicts an already-marked trail at a specific location crossing the Property, further shows and represents an intent to "set aside" a portion of private lands for public use. *Cf. Winooski Lumber*, 57 Vt. at 541-42; *McMahon*, 85 Vt. at 278-80; *Aiken*, 296 A.3d at 955.

Indeed, the parties' stipulation to Exhibit B makes this case substantially similar to *City of Montpelier v. McMahon*, *supra*, where a dedication and acceptance were found. Here, as in *McMahon*, the Town and the landowners agreed upon a land swap, such that a segment of an existing (or asserted) public right-of-way was relinquished to the landowners, and the landowners in turn relinquished a separate strip of land to the Town for use as a public way. And here, much like *McMahon*, the Town then prepared a survey of the new road (or newly-altered location of the road), which was in accordance with the parties' earlier agreement. In particular, both Exhibit B and the subsequent survey by Ms. Mithoefer depicted an altered course of the right-of-way in an area where it deviated away from its former course, so as to run south of "the meadow at Thomas Hill," so called. This mutual agreement to swap specific lands for different uses, represented on a map and survey prepared by the Town, is unequivocally indicative of an intent to dedicate the depicted right-of-way to public use.

Other provisions within the Settlement confirm this conclusion. For example, the provision obligating Fishkin/Marshall to not to object to the process, "pursuant to 19 V.S.A. Chapter 7, of altering and reclassifying the 1796 Road to a trail pursuant to 19 V.S.A. § 301(8)(A)," also shows their intent to dedicate. Those referenced statutory provisions give the Town the legal authority to undertake a process to reclassify an existing public road to a legal public trail, and alter its location.[2] Thus, by promising not to object, Fishkin/Marshall plainly and knowingly *acquiesced* to that process—one that includes a professional survey, public notice, an examination, a public hearing, a final written report with findings, and the recording of the report and survey. The fact Fishkin/Marshall later followed through with their obligation not to objectis additional proof of their intent to dedicate.

Additionally, the parties agreed that, after the completion of the reclassification/alteration proceedings, the Town would work with the State AOT to ensure that subsequent State Highway Maps for the Town of Chittenden would show "Town Highway No. 11" as "Legal Trail No. 10." Both of those references are to different categories or classes of *public* rights-of-way, recognized and claimed by a town (and confirmed by State review and inspection). A legal trail is simply a category or class that is below a Class 4 public road. By requiring the Town to ensure that subsequent State Maps recognized and depicted "Legal Trail No. 10" in place of "Town Road # 11," Fishkin/Marshall revealed their intention for the reclassification/alteration proceedings to result in a valid public trail, depicted in official public records. They did not, by contrast, request that the Town work with the

_____

[2] Notably, Chapter 3 of Title 19, which is where 19 V.S.A. § 301(8)(A) is found, is entitled "Town Highways," and Chapter 7 of Title 19 is entitled "Laying Out, Discontinuing, and Reclassifying Highways." There is no doubt what these provisions are about.

State to delete "Town Highway No. 11" and thereafter ensure that the Maps would show no other category or class of public right of way in its former location.

Moreover, Fishkin/Marshall also agreed not to seek compensation during the statutory reclassification/alteration process. Since such compensation would only be due if the process involved the public use of private lands, the mere reference to a right of the servient landowners to seek compensation is a recognition that the process concerns a *public* use right-of-way. *Cf. Gore*, 96 Vt. at 239 ("It is not a trivial thing to take another's land without compensation, and for this reason the courts will not lightly declare a dedication to public use." (internal quotation marks omitted)).

Lastly, the parties to the Settlement also agreed that the Town would reduce the assessed value of the Fishkin/Marshall property for multiple tax years, for purposes of local property taxation. Courts construe the payment of property taxes on lands as indicating a lack of intent to dedicate those lands to the public, "while nontaxation tends to show a dedication." 22B *Am. Jur. 2d Dedication* § 71; *see Laughlin v. Morauer*, 849 F.2d 122, 127 (4th Cir. 1988) ("Keeping in mind that the purse of a county government is among the dearest things to its heartstrings, we think it of considerable significance that the Park was taken off the tax rolls of Fairfax County with the recording of the plat of [the subdivision]."). Here, the landowners' filing of a tax appeal against the taxing authority, and then agreeing to dismiss that suit in return for the authority's reduction in the Property's assessed value, tends to show an intent by the owners (Fishkin/Marshall) to agree to have their lands burdened by a public use easement that lowers its fair market value.

Plaintiffs argue that Fishkin/Marshall were bound by only two promises of performance in the Settlement—to not object to the statutory proceedings to reclassify the disputed trail to a legal trail, and to not seek compensation during those proceedings—and that their intent cannot be derived from other terms within the Settlement. Tthat construction is refuted by the plain terms of the Settlement Stipulation. For example, the recital of the Stipulation states that each of the plaintiffs and the defendants "hereby agree and stipulate as follows . . . ." (Def.'s Ex. F, at 1.) The Settlement Stipulation also indicates that it is the parties' "entire agreement" on the "matters covered by" it, and that is "has been jointly negotiated and drafted." (Def.'s Ex. F, ¶¶ 13-14.) As such, Plaintiffs' construction, which would render the bulk of the Settlement's terms precatory, or perhaps the expressions of the Town alone rather than jointly stipulated expressions, cannot survive under the plain terms of the Settlement itself.

Moreover, Plaintiffs' construction of the Settlement rests on a mistaken view as to the Town's claim based on dedication and acceptance. That claim is not for a supposed breach by Fishkin/Marshall or their successors in interest, with regard to any contractual obligation or particular promise of performance. Nor is it in the nature of promissory estoppel. Indeed, it is undisputed that Fishkin/Marshall kept their express promises or obligations, by not opposing the reclassification/alteration proceedings, and by not seeking compensation during those proceedings. Rather, the Town's theory, consistent with the doctrine of equitable estoppel, is that the Town reasonably relied on Fishkin/Marshall's representations to its detriment, such that it would be unjust for Fishkin/Marshall *and all claiming in their right*, to be permitted to assert that the trail does not exist as a matter of law. As such, all the representations by Fishkin/Marshall within the Settlement Stipulation, and also revealed through their conduct, is relevant to the equitable determination.

In conclusion, the Town has met its initial burden on the issue of dedication. No reasonable fact-finder would be free to find that such a dedication was not clearly and unequivocally intended by Fishkin/Marshall, or find that the Town was without justification in concluding that Fishkin/Marshall had so intended.

## C. The Town's Reliance and Acceptance

The Town has also met its burden to show acceptance. In a more typical case, one involving a claim of dedication and acceptance arising by implication from the owner's acquiescence, it is the general public's open and adverse use of the disputed right-of-way that constitutes the reliance on the offer of dedication.[3] Here, there is no evidence showing the public's use of the disputed trail, either before 2004, or after the parties' settlement or road-establishment effort. However, there is ample evidence that the Town substantially changed its position in good faith reliance on the representations of Fishkin/Marshall.

The Town agreed to complete the statutory process that would result in a significant reduction of the extent of the public easement that the Town had originally claimed. *See Whitcomb v. Town of Springfield*, 123 Vt. 395, 397 (1963) (reclassification of a public road to a trail "reduce[s] the extent of the easement . . . held by the Town"); *Perrin v. Town of Berlin*, 138 Vt. 306, 307-08 (1980) (same). The Town also agreed to an alteration of the location of the asserted right-of-way, so that the newly-reclassified trail would avoid crossing over "the meadow at Thomas Hill." In 2008, the Town fulfilled those promises by completing the statutory process, along with Pittsford and Pittsfield. It also thereby expended "time and costs to go through a whole alteration and reclassification proceeding," as Plaintiffs' counsel have observed. The's Town's costs included those spent to retain a professional surveyor, Debra Mithoefer, to draw Exhibit B in 2006, and later prepare the survey made in accordance with her drawing. Additionally, the Town agreed to relinquish a portion of Mountain Spring Road to Fishkin/Marshall, and duly completed statutory discontinuance proceedings to that effect. The Town also agreed to not claim any unidentified corridors located on the Property as public roads, thereby ensuring that all rights to those corridors would revert back to Fishkin/Marshall as a matter of law.

These expressions and actions by the Town reveal an unequivocal intent by the Town to accept the disputed trail as a public trail. *See Winooski Lumber*, 57 Vt. at 542 (statutory proceedings to lay out a road are indicative of acceptance); *McMahon*, 85 Vt. at 278-80 (town's survey to effectuate land swap for new road, and construction of road in alignment with survey, shows acceptance).[4] Acceptance is also shown by provisions within the Settlement Stipulation that expressly reserve the

---

[3] Where the public's use is open and substantial in nature, and undertaken by the public in common as of right and without the owner's affirmative license or permission, it creates in the public "'an expectation of continued use that estops the owner from preventing it.'" *Wood*, 2006 VT 28, ¶ 11 (quoting *Town of Newfane v. Walker*, 161 Vt. 222, 226 (1993)).

[4] Plaintiffs make no argument on the issue of acceptance by the Town, and nor do they assert that the Town failed to take actions in detrimental reliance on the representations of Fishkin/Marshall.

Town's right to "take such steps as are reasonably necessary to *maintain* the used portion of the trail within the right of way," and "place appropriate signage." (Def.'s Ex. F, ¶ 3 (emphasis added).) That express reservation of a right to maintain is significant since, by statute, towns are not required to maintain legal trails. *See* 19 V.S.A. § 302(a)(5). In addition, the efforts undertaken by the Town to ensure that the State Highway Maps for Chittenden depict "Legal Trail No. 10," where "Town Highway No. 11" had been depicted, indicate an intention by the Town's selectboard to accept the disputed trail as a public trial. *See Gardner*, 135 Vt. at 90.

The Court concludes that no reasonable trier of fact could find from this record anything other than an unequivocal intent by the Town to accept the disputed trail as a legal public trail. Detrimental reliance, including the expenditures of public funds, and a relinquishment of the public's property rights, is also clearly shown. The Court also concludes that the record shows clearly that the dedication and acceptance was completed and effective no later than the Town's completion of the statutory reclassification/alteration proceedings in November of 2008, if not earlier. No additional lapse of time was necessary. *See Kirkland*, 2005 VT 90, ¶ 35.

## II. Plaintiffs' Motion For Summary Judgment

Given the above judgment as a matter of law, the Court must deny Plaintiffs' motion that seeks a summary judgment declaring that the Town has failed to establish a legal public trail on the Property. The Court will also deny as moot Plaintiff's motion on its claim that seeks a declaration that the supposed road or trail was discontinued during the 1800s. There is no longer an actual, live case or controversy, or dispute or uncertainty, sufficient to support or warrant adjudication of that question. *See Echeverria*, 2024 VT 47, ¶¶ 24-27.

## ORDER

Wherefore, the Town of Chittenden's motion for summary judgment, filed October 1, 2024, is GRANTED. The motion for summary judgment filed October 1, 2024, by Plaintiffs John and Debra Gerlach, is DENIED.

Electronically signed on May 5, 2025 pursuant to V.R.E.F. 9(d)

*Alexander N. Burke*

Alexander N. Burke
Superior Court Judge